# Staunton.

## LINKENHOKER'S HEIRS V. DETRICK AND ALS.

### SEPTEMBER 24th, 1885.

CONSTITUTION—*Homestead— Waiver.*—Section three, chapter 183, Code 1873, which authorizes the waiver of the homestead exemption, whether made before or *after* the property has been set apart, is not in conflict with the eleventh article of the constitution of this State; and if a party executing his bond or note before or *after* the property has been set apart as his homestead exemption, waives his homestead exemption as to the bond or note, neither he nor his wife, in his lifetime, nor after his decease, neither his widow nor his infant children, can set up said homestead exemption as against said bond or note.—*Reed* v. *Union Bank*, 29 Gratt. 719.

Appeal from decree of circuit court of Botetourt county, rendered 28th October, 1882, in the cause of J. R. Linkenhoker's administrator against J. R. Linkenhoker's heirs and als.

The object of the suit was to have an account of the assets and of the debts due from the decedent's estate, and to settle the same in full.

J. R. Linkenhoker had filed and recorded his deed setting apart a tract of land and other property as his homestead exemption in 1871. After that he had executed his bonds to L. F. Detrick and others, waving his homestead as to the same. Without subjecting this homestead the estate was inadequate to the payment of these debts. The circuit court decided that the homestead exemption could not protect the property set apart thereby from sale to pay these debts. From

this decree the decedent's heirs appealed to this court and obtained a writ of *supersedeas.*

*G. W. & L. C. Hansbrough,* for the appellants.

Though article eleven, section one, of the constitution of this State, and the act of June 27th, 1870, ch. 157 (Code of 1873, ch. 183), have been before this court for interpretation a number of times, and several questions of importance arising under them have been decided, yet the question which arises in this case has never been decided by this court.

The homestead cases decided in 1872, 22 Gratt. 266, settled that said article and act are in conflict with article eight, section ten, of the constitution of the United States so far as they apply to debts contracted before the Virginia constitution went into operation.

In *Reed* v. *Union Bank,* 29 Gratt. 719, this court held that section three of said ch. 183, which authorizes the waiver of the homestead exemption, is not in conflict with said eleventh article of the constitution, and that if a party executing his bond or note waived his homestead exemption as to his bond or note before setting apart the property, neither he nor his wife can set up his homestead exemption as against said bond or note.

In *White* v. *Owen,* 30 Gratt. 43, this court held that a deed of trust to secure a debt, executed by the grantor and his wife conveying real and personal property which had been previously set apart by the husband as his homestead, has priority over the homestead exemption, and that the said property may be subjected to satisfy the debt.

Plain authority for the decision was close at hand in section seven of ch. 183, where it is said : " A homestead so set apart or purchased shall not be mortgaged, encumbered, or aliened by the owner if a married man, except by the joint deed of him-

self and wife, executed and acknowledged after the manner of conveyances of lands of a married woman."

The learned judge pronouncing the opinion in that case, asks the question : " Can property which has been set apart by a householder and head of a family be mortgaged, encumbered, or aliened by his subsequent deed of trust, *his wife uniting therein,* to the payment of his debts ?" And he proceeds to construe the said eleventh article. He says: "It does not declare that his property shall be exempt absolutely, as by the laws known as ' the poor laws.' But he shall be *entitled,* not required, to hold it exempt. There is no power vested in his wife or children, or other member of his family, to require him to hold it exempt. * * * It is a discretion or privilege wholly conferred on him."

This is the dry, technical argument favoring the constitutionality of the act authorizing a waiver of the homestead exemption, and applies forcibly enough (although it does certainly tend to impair and defeat the intent of article eleven) to a waiver made *before* setting apart the exempted property. But such an argument can have no application to a waiver made *after* the householder had exercised his discretion, had set apart the homestead exemption, and had vested in himself and family a new estate, " an estate of homestead," created under section five of said article eleven, " a sort of joint tenancy, with the right of survivorship between husband and wife, which estate cannot be altered or destroyed, except by the concurrence of both, in the manner provided by law." How, and how alone, such new estate of homestead, created by a married man, under the constitution and laws of Virginia, may be mortgaged, encumbered, or aliened (that is " altered or destroyed," *or affected in any manner*), is prescribed by section seven, chapter 184, which was enacted under section five of article eleven, and prescribes that it shall not be done except by the joint deed of husband and

wife, &c.    In speaking of this seventh section, the same learned judge in *White* v. *Owen,* says: "This provision seems to be designed to protect the wife against alienations or encumbrances by the husband against her consent." And yet a little further on he appears to intimate (with the avidity some constantly manifest to defeat or impair this ·beneficent constitutional provision) that *he* thought the wife's concurrence unnecessary; whereupon Moncure P. and Staples J. were prompt to say such question did not arise in the case, and to disavow the opinion expressed.

In *Shipe, Cloud & Co.,* v. *Repass,* 28 Gratt. p. 733, Staples, J., says: " No one can look into the provision of our constitution and the adjudicated cases of other States, and fail to see that the primary object is to provide for the family." We quote this saying of Staples, J., to offset the saying of Christian, J., in *Reed* v. *Union Bank,* 29 Gratt. 735, where he rejects as authority the decisions of other States which hold there can be no waiver of the homestead exemption, and gives as the reason for such rejection that the constitutions of those States provide either that the homestead " *shall be exempt,*" or that " *there shall be no waiver,*" or that the homestead shall be " *for the sole use of the family.*" Article eleven, section five, Virginia constitution, says : " *For the benefit of himself and family,*" which words Judge Staples declared, plainly showed " that the primary object was to provide *for the family.*" Now, then, if the words " for the sole use of the family," create vested rights in the family, which the householder cannot waive or defeat, will not the words " for the benefit of himself and family," equally create vested rights in the family, which the householder cannot, *acting solus,* waive or defeat ? The former words create interests vested *solely* in the family. · The latter words create in the husband and in the family, jointly, vested interests. In fact, the deed of declaration of the homestead exemption creates a new estate, a sort of

joint tenancy, with the right of survivorship as between husband and wife. We cannot better illustrate our idea than by a full quotation from the opinion of the Supreme Court of California, in *Taylor* v. *Hargous*, 4 Cal. 268, to-wit: " As soon as property acquires the character of homestead, the nature of the estate becomes changed, without reference to the manner in which the title to the property originated, whether it was the separate estate of either husband or wife or the common property of both. It is turned into a sort of joint tenancy with the right of survivorship, at least as between husband and wife, and this estate cannot be altered or destroyed, except by the concurrence of both, in the manner provided by law." Now, whatever may be the character of the homestead exemption before it is set apart, which is defined by the adjudged cases of this State as a mere privilege which the householder may exercise, or may waive at his pleasure, yet, after the householder shall, under section five, article eleven, and the act enacted under it, have set apart property to hold as the homestead exemption for the benefit of himself and of his family, then a sort of an estate immediately becomes vested in the family, jointly with himself, which cannot be divested except by the joint deed of himself and his wife. This reasoning then precludes the idea that under the said eleventh article of the constitution, the legislature could, without impairing and defeating the benefits intended to be conferred by the provisions of said article, empower a waiver in a bond, &c., by the husband alone, of the homestead exemption, to render property previously set apart as exempt by him, liable for such debt under legal process. Hence, in so far as the third section of chapter 183, Code 1873, makes such waiver good against a homestead exemption *previously set apart*, we submit, with confidence, that it is unconstitutional and void. It impairs and defeats a homestead already created and perfected, and divests and defeats permanently vested rights.

Argument.

We have ventured to say that in *Reed* v. *Union Bank, supra,* this court, on purely technical grounds, on the phraseology, perhaps the inadvertent phraseology of the section one of article eleven, on the words "entitled to hold exempt," instead of "shall hold exempt," has decided that section three of chapter 183, is within the purview of said article so far as it authorizes a debtor solely, in executing a note, to waive *prospectively* his right to claim the benefit of the homestead exemption *not previously set apart.* That is one thing. "It is a mere waiver of the debtor's own personal privilege," says the court. But it is quite a different thing to decide that said section three is within the purview of said article, so far as it authorizes a debtor *solely,* in executing a note, to waive *retrospectively* the homestead exemption which, by a duly recorded deed, he has previously declared he holds for the benefit of himself and his family. That would be to enable the debtor *ex post facto* to impair and defeat the rights lawfully vested in his family. It was this Parthian, back-handed, retrospective defeating and impairing operation and effect of the article eleven itself, so far as made the homestead exemption override rights acquired by creditors under contracts made previous to the adoption of said article, which made that article itself to that extent, to the extent that it was retrospective, in conflict with article seven, section ten of the constitution of the United States. Is not the same reasoning which demonstrates that said eleventh article was in conflict with said eighth article, equally a demonstration of the conflict which exists between the said third section and said eighth article? The contracts referred to in said eighth article created vested rights, which were impaired by said eleventh article. Does not the deed declaring the homestead exemption for the benefit of the debtor's family, also create vested rights in that family? If so, how then can a retrospective waiver be allowed

to impair and defeat those vested rights, without a like conflict with said eighth article?

One primary canon of construction, whether of private instruments or of public statutes, is to look to every part, and to construe every part so as to lead to a harmonious interpretation of the whole.

Applying that canon to the 183d chapter, and looking as well to the said seventh section as to the said third section, and construing the latter by the light of the former, the interpretation of the whole becomes harmonious. It is demonstrably this, and nothing more: that before the debtor has set apart the homestead exemption, his right so to do is a mere personal privilege, and he may prospectively waive the right to exercise that privilege, and his creditor having trusted him upon the faith of the waiver, the debtor cannot afterwards recant his waiver. But that after the debtor has set apart the homestead exemption, rights have become vested in his family and those rights cannot be affected in any way, except by the joint deed of the husband and of the wife. This construction does seem clear as sunbeams to us, who never fail to carry in our mind's eye, so much of sections five and seven of said article eleven as says: "But this section shall not be construed as authorizing the General Assembly to defeat or impair the benefits intended to be conferred by the provisions of this article." "The provisions of this article shall be construed liberally, to the end that all the interests thereof may be fully and perfectly carried out." We are also unable to understand how a legislature that had those clauses before them, could enact a law authorizing the debtor *acting solus,* even prospectively to waive the benefit of the homestead exemption he had not previously set apart, but was entitled to set apart. To bestow such an authority operates to disappoint the intentions of the framers of the constitutional homestead provisions; and we respectfully invite

this honorable court's attention to the language of Denio, J., in the case of *Kneetle* v. *Newcomb*, 22 N. Y., 250, which is quoted at large in Thompson on Homesteads, § 443 § 444.

*Glasgow & Glasgow*, for the appellees.

HINTON, J., delivered the opinion of the court.

By deed dated December 11, 1871, and duly recorded, James R. Linkenhoker, of the county of Botetourt, declared his intention to set apart and hold as a homestead for the benefit of himself and family, under the provisions of the constitution and laws of this State, certain real estate situated in said county, of the value of $1,700, and certain personal property of value sufficient to make the realty and personalty amount to $2,000.

In the years 1879, 1880 and 1881 Linkenhoker contracted several debts to L. F. Detrick, John S. Reese & Co., and others, by bond or note, wherein he waived the homestead exemption. He died in January, 1882, leaving eight children, the six youngest being infants under twenty-one years of age. He also left two other parcels of land and some other personal property. All together, however, was insufficient to pay his debts.

This suit was then brought to settle his estate, and to subject his realty to sale to pay his debts, and in it the question was raised, whether or not the waiver of his homestead by Linkenhoker, in bonds executed by him since the recording of his homestead deed in 1871, was valid and binding on his estate. And this is the only question we are now called upon to decide; but a determination of it necessarily involves the question of the constitutionality of the third section of chapter 183 of the Code of 1873, which provides that in all cases where

a debtor or contractor shall declare in the body of the bond, note, or other evidence of the debt or contract, that he waives as to such debt or contract the exemption from liability of the property which he may be entitled to hold as exempt under the provisions of this act, the said property, whether *previously* set apart or not, shall then be liable to be subjected for such debt or contract, under legal process, in like manner and to the same extent as other estate of said debtor or contractor, &c.

Now, upon the most familiar principles, every statute is presumed to be constitutional, and it is incumbent upon those "who question its validity to show wherein its invalidity consists." In the enactment before us we have a legislative construction in respect to the power of the householder to waive his homestead after it has been set apart, and unless, upon an examination of the subject, we shall be satisfied that it is in conflict with some provision of the constitution, it must be sustained.

Now, while the precise question under consideration has not been before this court, yet the matter, in various other aspects, has been the subject of judicial decision in this court and in the circuit court of the United States for the eastern district of Virginia; and as the reasoning of the judges in those cases seems pertinent to this case, and goes far towards establishing the validity of this enactment, we will make a few quotations from their opinions:

*In re* Solomon (2 Hughes' R., 164), Waite, Ch. J., said: "The constitution grants the exemption as a privilege to the householder. It declares that he shall be *entitled* to hold property to be *selected* by him. No specific property is set apart, but he can select such as he desires to have, and when selected, it is to be set apart. If he fails to select, the process of the law can be executed, and the sale made."    *    *    *    *

The privilege, so far as it is given by the constitution, is

personal to the householder. The language is, "to be selected *by him.*" If he neglects to act, no one is authorized by the constitution to act in his place. The case is entirely different from what it would have been if it had been declared that certain specific property should not be sold under execution, &c.

In that case the constitution, or a law containing similar provisions, would execute itself. As it would be a part of the public policy of the government to exempt that particular property absolutely from forced sale, its provisions could not be waived. It would be beyond the legal power of an officer to levy upon and sell such property.

Here, says he, however, the policy is not to exempt absolutely, but the householder has a right to claim an exemption. Whether he will make his claim or not is optional with him. If he does not claim, he cannot have; and it is difficult to see why, if he may waive at the time of the sale by refusing to select, he may not before. If he can waive at all it seems to us it follows necessarily that, for a good consideration, he may make such a contract to waive as the courts will enforce.

But it is further provided that nothing in the article of the constitution referred to should be construed to interfere with the sale of the property or any portion of it, by virtue of any mortgage, deed of trust, pledge, or other security thereon. Thus it is made expressly to appear that it was not the intention of the framers of the constitution to prevent the householder from contracting for the sale or incumbrance of the property. He was not required to hold it absolutely for himself and family. It was to remain entirely under his personal control, to be dealt with in such manner as he saw fit. His right to sell or incumber is as distinctly given as his right to select. Now all this was said in a case where the waiver antedated the claim of homestead, but the reasoning is general, and it seems to us to be as applicable to this case as to the one in which it was pronounced.

In *Reed* v. *Union Bank of Winchester*, 29 Gratt. 719, which was a case in which the waiver antedated the claim of homestead, Christian, J., delivering ·the unanimous opinion of this court; and, after referring to all the provisions of the constitution bearing upon the case, said: "It is plain that there is in none of these provisions, nor in all combined, any *express* prohibition of a waiver of the homestead exemption by a householder or head of a family, or any interdiction of the powers of the legislature to provide for such a waiver, or the mode in which it may be exercised. There being no express prohibition the question is, is there any restriction, by necessary implication, upon the power of the legislature to pass the act in question? I think not. I think the constitution grants the exemption as a privilege to the householder or head of a family. It declares that 'he shall *be entitled* to hold' property *to be selected* by him. 'He shall be entitled to hold' plainly means that he may, if he chooses, have the right to hold such property as he may choose to select and set apart as his homestead, not exceeding in value $2,000, &c.,   *   *   *   exempt from execution, sale," &c. And he then goes on, after having alluded to the fact that the language was not in the constitution as in the poor debtor's law, that certain property "shall be exempt" from levy, &c., which would have made the exemption absolute, to answer the objection which has been so earnestly pressed in this case, namely: that it would defeat the very object and intent of the homestead exemption if the head of the family was allowed to waive the benefit of exemption, or otherwise dispose of property in which his family had the right of homestead. And he then states that in Illinois, New York, Vermont, Minnesota, Michigan, North Carolina, California, Arkansas, and Georgia, their constitutions or statute laws provide either that the homestead "shall be exempt," or that there "shall be no waiver," or that the homestead shall· be "for the

sole use of the family," and so accounts for the decisions in these States which deny the householder the right to waive his exemption. 29 Gratt. 719.

And in the subsequent case of *White* v. *Owen*, 30 Gratt. 43, it was held by all four of the judges who were present that a deed of trust to secure a debt, executed by the grantor and his wife, conveying real and personal property which had been previously set apart by the husband as his homestead, has priority over the homestead exemption, and that the property so conveyed in trust may be subjected to satisfy the debt. In this case Anderson, J., argues forcibly to show that the exemption from sale under any *execution, order or other process* has reference to sales by judicial procedure or under legal process, as contradistinguished from sales by the householder as by mortgage, deed of trust, pledge, or other security created by his own act. He then, in answer to the suggestion that the family have a vested right in the homestead, at least during the life of the householder, says: "I find nothing in this article which shows an intention to divest the householder and head of a family of his property, and of the unrestricted right to dispose of it as he chooses. Nothing, which by express terms or by implication, divests him of his title and vests it in his wife and children, severally or jointly with himself. If, says he, it could be construed to divest him of his property and to vest it in others, it would operate to vest in persons, if he had no wife or children, who bore to him no such relation—to any who might constitute his family, though not even of his kindred." Such can hardly be conceived to have been the intention. It is plain that the whole purpose and intent of the article was to enable the owner of the property, if he desired for the benefit of his family, to hold so much of it exempt from execution or other legal process as did not exceed in value $2,000. There is not a syllable or a sentence in the whole article which indicates a

purpose to deprive the owner of his *jus disponendi*, or to hold it exempt from seizure and sale except under execution, order or other judicial process. Nor is there in the deed of homestead which he is authorized to make by the act of assembly, pursuant to the fifth section of this article of the constitution. It is not an alienation of his property. It does not divest him of his title and vest it in others. It is merely designed to set apart—to designate—the portions of his property which he claims to hold, under the homestead provision of the constitution, exempt from seizure and sale under any execution, order or other legal process, and to give notice of it to the world."

I have thus quoted at length from these opinions, not only because they show the reasons which, in the opinion of these courts and judges, influenced the framers of the constitution in allowing the homestead exemption, but because they embody our views on the subject fully as well as we could express them. If they be sound—and we have no doubt of their correctness—it is manifest that the real intention of the framers of the constitution was, as we have before shown, to confer upon the householder or head of a family a personal privilege, of which he might avail himself or not, as his views of the interests of himself and family might dictate; and that they, realizing that whilst it might often be expedient for the householder to set up his claim to this exemption, it might not always be for the benefit of either himself or family to retain it as a homestead, wisely so framed the provision as to prevent his being deprived of the exemption by the various processes of the law, whilst at the same time it left in the householder the absolute right of disposing of it which he enjoyed before the property was set apart. The homestead is a shield to protect the helpless and unfortunate debtor from the importunate and incompassionate creditor—not a millstone to be hanged about the debtor's neck. If all this be so, it is perfectly clear that it is

utterly irreconcilable with the idea that there is any *estate* vested in the family by the mere act of the debtor in setting apart a designated portion of *his* property and holding it exempt from the process of the law, except in certain enumerated cases, and from the grasp of the creditor, except where the householder, for some consideration deemed by him to be valuable, voluntarily subjects it to incumbrance or sale. Nor can I perceive anything in this *jus disponendi* of the householder—anything which militates against the idea that it is held for the *family* as well as for the householder, for the effect of the provision is to allow the householder to select and set apart and hold as a homestead certain property so long as, in his discretion, it may be for the benefit of himself and family, and when, in his opinion, it is more for their benefit to do so, to dispose of it. A provision permitting a householder to hold as exempt certain property so long as it may be for the benefit of himself and family is perfectly consistent with one which permits him to retain the right to make sale of the same property when it shall be for the benefit of the family for him to do so; and as the householder, being the head of the family, is of necessity more especially charged with the support and maintenance of its members, it would seem to be peculiarly proper that the power to charge, incumber or make sale of the property should be lodged in him.

It has been argued that as the words "for the sole use of the family" have been construed, in other States, to create vested rights in the family, so the words "for the benefit of himself and family" should receive a like construction. But the ready answer to this suggestion is that the use of words like these, "there shall be no waiver," or "for the sole use of the family," exclude the idea that the husband or father has the absolute right of property in the homestead, and shows that it is a part of the public policy of the government to exempt that par-

ticular property absolutely from forced sale, and its provisions could not, therefore, be waived; but in the other case, as we have shown, no such implication can arise.

We find no error in the decree of the circuit court of Botetourt county, and the same must be affirmed.

Decree affirmed.