## Richmond.

### MURPHY v. CITY OF RICHMOND.

November 17, 1910.

Absent, Harrison, J.

1. HOMESTEAD—*Liability for Taxes—Estate of Widow.*—Upon the death of a householder who has set apart a homestead in land, his widow does not take a life estate in the land, but she and the minor children simply hold it, exempt as before from liability for certain debts, and taxes should be assessed against it in the name of the householder or his estate, and, upon the death of the widow, the taxes assessed against it during her lifetime are properly chargeable upon the corpus of the land itself. It is not a case where the interest of the life tenant only is liable for taxes. Neither the Constitution nor the statute giving the householder the right to claim a homestead create or vest in either householder or his widow any other or different estate from that which they held before. The right of the widow, upon the death of the householder, is a mere personal right to occupy and possess the premises, unaccompanied by any new or additional title to or property interest therein.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for the complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*John A. Lamb* and *Samuel A. Anderson*, for the appellants.

*Henry R. Pollard* and *Geo. Wayne Anderson*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

This suit in chancery was instituted by the city of Richmond against the children and heirs at law of James Murphy, deceased, for the purpose of collecting certain taxes due the city, assessed against James Murphy in his life time and some years after his death, upon certain real estate owned by him situated in the city of Richmond.

The "agreed facts" out of which this appeal arises are as follows: That James Murphy was the owner of the real estate involved in these proceedings; that Murphy became indebted to various people, and certain judgments were obtained against him; that in order to protect himself and family he, on the 15th day of January, 1878, executed his homestead deed and caused the same to be recorded in the clerk's office of the Chancery Court of the city of Richmond; that on the 15th day of March, 1884, James Murphy died, leaving a widow, Ann Murphy, and three children (who are the defendants to this suit); that Ann Murphy, continued to occupy the property in question until her death, on the 10th day of October, 1901; that she never remarried, and claimed the right to the possession of said property by reason of the homestead deed executed and recorded by her husband as aforesaid. It further appears from the agreed facts that all of the taxes sought to be recovered in this suit were assessed in the name of James Murphy, both before and after his death, which occurred, as stated, on March 15, 1884.

The cause was referred to a commissioner of the court, who reported that by reason of the homestead deed of James Murphy, Ann Murphy, his widow, took and held *a life estate* in the real estate set apart in the homestead deed, from the date of James Murphy's death until her own death, and that the taxes claimed by the city were not a lien upon said property during the widowhood of Ann Murphy, but only upon her life estate therein. To this report the city of Richmond excepted,

which exception was sustained, the court holding the taxes claimed in the bill as due the city to be a lien on the fee simple right to the property, and from the decree so holding the case is brought here on appeal.

The only assignment of error is to the sustaining of the exceptions to the commissioner's report, thereby overruling the contention of appellants that the homestead deed of James Murphy had the effect of creating upon his death a life estate in his widow in the property, and as a consequence, during that period—that is, from the death of James Murphy in 1884 to the death of his widow in 1901—under the ruling of this court in *Tabb* v. *Commonwealth*, 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283, there was no lien for delinquent taxes on the real estate set apart in the homestead deed, as against the so-called remaindermen, who are the appellants.

In *Tabb* v. *Commonwealth*, *supra*, Mrs. Tabb held a life estate in the lands assessed with taxes against her by virtue of a deed of conveyance settling upon her and her husband for their joint lives, with the remainder to the survivor for life, with remainder to their children, and under the statutes relating to the assessment of property for taxation, reviewed at length in the opinion by Riely, J., the property was rightly assessed for taxation against Mrs. Tabb, the tenant thereof for life having the freehold in possession, and the remedy for the enforcement of the lien for the taxes and levies could only be against the life estate:

In the case before us, neither the constitution nor the statute giving to a householder and head of a family the right to hold exempt from levy, etc., for the benefit of himself or his widow, etc., property of a limited value, creates in the husband or his wife who survives him any legal estate whatever, but only provides for the protection of property set apart and claimed as a homestead against levies, execution, etc., while held by the householder, his widow, unmarried daughters, or infant children.

Article XI of the Constitution entitles a householder, etc., "to hold exempt from levy, seizure, etc., under any execution, order or other process, issued on any demand for any debt, etc., his real and personal property or either * * * * to the value of not exceeding two thousand dollars, to be selected by him," and by sec. 5 of the same article the General Assembly was required at its first session to prescribe "in what manner and on what conditions the said householder or head of a family shall thereafter set apart and hold for himself and family a homestead out of any property hereby exempted.

Conceding that these provisions of the Constitution were broad enough to empower the legislature to create in, or carve out of the exempted property an estate which would be or become, as to the real estate, a *freehold*, an examination of the statute will disclose, we think, that the legislature did not exercise such power, but went only to the extent of protecting property claimed as a homestead against levies, executions, etc. The statute, which became section 1 of chap. 183 of the Code of 1873, which is now section 3630 of the Code of 1904, with only a limitation as to assessments after a named date, provides, that every householder or head of a family, as provided for in the Constitution, shall be entitled to hold his real estate or personal property, etc., claimed as a homestead, exempt from levy, etc., under the process of any court, except for demands of a specified character, among them being, "for a lawful claim for any taxes, levies or assessments accruing after the 1st day of June, 1866.

By section 4 of chap. 183, Code, 1873, in order that the householder might be entitled to the benefit of a homestead exemption, he was required to "declare" by deed duly recorded in the county in which such homestead, or the greater part thereof, is situated, his intention to claim such homestead, with a description of the property so claimed as a homestead. Section 8 of the same chapter of the statute—relied on by appellants to support their contention that the widow of James

Murphy held a life estate in the real estate set apart in his homestead deed, against which the taxes now claimed by the city of Richmond could rightly have been and ought to have been assessed and collected—is as follows: "The homestead provided in this act shall continue after his death, for the benefit of the widow and children of the deceased until her death or marriage * * * * after which it shall pass, according to the law of descents, as other real estate, or as may be devised by said householder, not being subject to dower, yet subject to all the debts of the said householder or head of a family."

Under the statute carrying into effect the constitutional provision for a homestead to a householder and head of a family— chap. 183, Code of 1873—no estate was created other than that which the householder had before; nor does any provision of the statute vest any greater or different estate from that which the householder previously had, and this being unquestionably true, certainly the homestead declaration of the husband does not create or vest in his wife surviving him an estate within the contemplation of law, but there is provided by the statute merely an extension to the wife of the husband's right to hold, exempt from execution for certain debts of the husband, the homestead property. She could not continue to hold a greater estate or right in the property than the husband could have held against a claim on execution issued for a debt against which the homestead exemption was not authorized, such as a fiduciary debt, taxes or assessments due the State or any county, city or town. Section 15 of the statute, *supra*, expressly provided that the claim of the homestead should not prevent the collection of a debt "for a lawful claim for taxes, levies or assessments accruing after the first day of June, 1866."

Appellants in this case do not deny that the real estate claimed as a part of James Murphy's homestead is liable for the taxes, etc., claimed by appellee assessed against him up to

his death and after the death of his widow, but that during the years that the widow held the property, the taxes, etc., should have been assessed against her, and as this was not done the claim of appellee for the taxes, etc., assessable during that period cannot be enforced against the property in question to the prejudice of the appellants. Now this would be unquestionably true if an estate for life had been created by deed or otherwise in the widow of James Murphy, as was the case in *Tabb* v. *Commonwealth, supra,* and not merely a right to hold exempt from sale under any execution, order, or other process. *White* v: *Owens,* 30 Gratt. 43.

In the case just cited the opinion says: "It is plain that the whole purpose and intent of the article (Art. 11, Const., *supra*), was to enable the owner of the property, if he desired, for the benefit of his family, to hold so much of it exempt from execution or other legal process as did not exceed $2,000. There is not a sentence or syllable in the whole article which indicates a purpose to deprive the owner of the property of his *jus disponendi,* or to hold it exempt from seizure and sale, except under execution, order or other judicial process. Nor is there in the deed of homestead which he is authorized to make by the act of Assembly, pursuant to the fifth section of this article of the Constitution. It is not an alienation of his property. It does not divest him of his title and vest it in others. It is merely designed to set apart—to designate the portion of his property which he claims to hold under the homestead provision of the Constitution, exempt from seizure and sale under any execution, order or other legal process, and to give notice of it to the world."

In that case the opinion takes it as a *concessum* that the homestead deed does not pass any title to the homestead property, and declares that the deed does not have the effect of creating a trust. See also *Helm* v. *Helm,* 30 Gratt. 404; *Linkenhouse* v. *Deitrick,* 81 Va., 44, 59 Am. Rep. 648; *Barker* v. *Jenkins,* 84 Va. 895, 6 S. E. 459.

"The homestead estate or right is purely a creation of the Constitution or statute, and there is no precisely similar interest or estate known to the common law. The entire object of the homestead exemption laws is to secure a homestead— in most jurisdictions a home for the family—and no infringement upon rights of property and titles is intended, except such as may be necessary for this object. A claim of homestead does not give any new title, nor does it strengthen or enlarge the one existing." 15 Am. & Eng. Ency. L. (2nd ed.), 526-7. See also Waples on Homestead Ex., p. 265; Washburne on Real Prop. (6th ed.), sec. 540.

In *Mahaffy* v. *Mahaffy*, 63 Ia. 55, 18 N. W. 685, the opinion says: "The right of the wife to continue in possession and occupancy of the homestead, after the death of her husband, is not a right or interest in his estate which she takes by inheritance, but is entirely distinct from her interests which she takes by virtue of that right. It is a mere personal right to occupy and possess the premises, but is unaccompanied by any title or property interest therein."

We have been cited for appellants to a number of cases decided in other States having a constitutional provision and statute providing a homestead exemption similar in many respects to ours, but upon an examination of these cases we find that in so far as they appear to sustain appellant's contention, the holding of the courts is due to the peculiar features of the homestead provision under consideration, as applied to the facts of the particular case, and not by reason of the view that the homestead provisions created a new estate either in the husband claiming the benefit of the exemption, or in his widow holding the property after his death, and not merely an exemption or right of occupancy under the statute. At all events, in so far as these cases are in conflict with the view that the right of the wife to continue in the possession and occupancy of the homestead, after the death of her husband, is a mere personal right to occupy and

possess the premises, unaccompanied by any title to or property interest therein, they do not command our approval.

The seeming conflict or diversity of the courts in the various States of the Union is accounted for in 21 Cyc. p. 579, as follows: "There is a diversity of holding as to the nature of the estate or interest which is transmitted to the surviving wife, due to a difference in the provisions of the different statutes. Under some statutes the wife takes a fee simple title, the rule applying equally to property which was the husband's alone, or which was a community homestead. By other homestead laws she has a conditional estate for life, which is characterized as a mere right of occupancy."

This view was taken by this court in *Blose* v. *Bear*, 87 Va. 177, 12 S. E. 294, 11 L. R. A. 704, where in referring to the diversity of holding by the courts of other States as to the nature of the estate or interest which is held in the property claimed as a homestead, the opinion says: "But the answer to all this is found in the character of our homestead exemption, which, unlike that in most of the other States, is not so much an estate in land as a right of occupancy which cannot be disturbed while the homestead character exists. This view of the homestead exemption was first taken by the late lamented chancellor, Judge Edward H. Fitzhugh, in the case of *Richmond* v. *Butler*, &c., reported in 1 Va. L. J. 120; and the same general view, although expressed in different language, has been repeatedly taken by this court since. *Scott* v. *Cheatham & Als*, 78 Va. 83; *Lindsay* v. *Murphy*, 76 Va. 428."

Since, therefore, the decisions of our own appellate court hold that neither our Constitution nor our statute giving the right to a householder to hold for himself or his widow a homestead, created either in the husband or the widow any legal estate whatever, but merely a right to hold the property set apart as a homestead, exempt from levy, seizure, etc., under the process of any court, except demands of a specified

character (among the excepted demands being "for a lawful claim for any taxes, levies or assessments accruing after the first day of June, 1866") the property of James Murphy set apart by him as a homestead could properly have been assessed for taxation, either State or city, during the period that his widow continued to hold and occupy the same under the statute after his death, only in the name of James Murphy, as was done, or James Murphy's estate.

It follows that we are of opinion that the decree appealed from is right and it is affirmed.

*Affirmed.*