ANDERSON, J.
Luther Pixley, one of the appellees, on the 9th day of June, 1874, executed his deed of homestead, setting apart certain personal property which he valued at $816, and claiming the residue of what he was entitled to under the homestead law out of his hotel situate in Clarksville, which he valued at $3,000,which deed was afterwards, on the 11th of June, admitted to record.
Afterwards, on the 1st of August, 1874. the said Luther Pixley and Nannie, his wife, united in a deed conveying in trust to W. E. Homes, trustee, to secure a debt due from the said Luther Pixley to W. T. White by bond for $2,888.97, with interest thereon from the 1st of September, 1874, till paid, and also “a further amount to said White, not now recollected,” the said hotel in the town of Clarksville, with all of the real estate thereto attached; also all of his personal property “except what is known as the poor debtor’s exemption under the laws of 1860.” *The personal property is specified, and embraces all that is contained in his homestead deed, and likewise all of the real estate.
At the September term, 1874, of the Mecklenburg circuit court, T. R. Owen obtained a judgment against George A. Reardon and Luther Pixley for $612.50, with interest and costs, and subsequently brought his bill in chancery to set aside the said deed of trust as usurious and fraudulent, and to subje.ct the property conveyed by it to the satisfaction of his judgment, making Pixley and wife, Homes and White parties defendant. Pixley, White and Holmes answered severally, and each of them denied the allegations of fraud and usury. Afterwards the deposition of Pixley was taken by the plaintiff Owen to contradict his answer, but it is unsupported by any other witness, and is contradicted by the depositions of Homes and White, the former of whom does not appear to have any interest. The allegations of fraud and usury are not sustained by the proofs in the cause, nor by the decree of the court, and there is no appeal from the decree on that ground.
But a petition was filed in the cause by Luther Pixley, setting up his homestead deed aforesaid, and claiming the full benefit of it, both against Owen’s judgment and W. T. White’s deed of trust. And the court held by its decree of the 6th of December, 1876, that the deed of homestead is entitled to precedence over the said deed of trust, and that the deed of trust preceding in date is entitled to priority over the judgment in favor of plaintiff. From so much of said decree as gave precedence to the homestead deed over the deed of trust, this appeal was taken by W. T. White and W. E. Homes, the trustee, and it presents the question for the decision of this court: Can property which has bfien set apart by a householder and head of a family, by his deed of homestead, duly recorded, be subjected by his subsequent deed of *trust, his wife uniting therein, to the payment of his debts? In other words, is property, after it has been so set apart, exempted by the constitution of this state from sale under the deed of trust? This question can only be determined by a right understanding of Article XI of that instrument.
To construe this article aright, it will not do to assume that the framers of the constitution had an object in view in the homestead provision, or ought to have had, which the language they employ does not import, and then to supply terms to attain the supposed or desired object. Thus whilst it plainly appears that it was their purpose to enable the householder or head of a family to set apart and hold such portion of his property as does not exceed $2,000 in value, exempt from execution or other legal process, if there is no language employed conveying the idea that it should be so held by him as to be thereafter exempt from sale or incumbrance by his own act, we cannot assume that such was the intention of the framers of the constitution, even though we should think it was proper and reasonable to have imposed such a restriction upon his right to dispose of his property by his own act, or because we can see no good reason why the constitution should authorize the householder to exempt his property from execution, and allow him the unrestricted right of disposing of it by his own act. They may have had reasons for the distinction which were satisfactory to themselves, though not satisfactory to us. We cannot be responsible for the reasons which influenced the framers of the constitution; nor is it incumbent on us to show that in proposing one object, as for instance the exemption of the debtor’s property, or a part of it, from sale under execution or other legal process, that the other object, to leave the owner unrestricted in his right to dispose of it by his own act, was not inconsistent or unreasonable.
*30 But whilst I hold these to be sound principles of construction, *1 do not think that there is anything unreasonable or inconsistent in the object and intention of the framers of this article to authorize the householder or head of a family to set apart and hold his property, or a part of it, exempt from sale under execution or other process, and at the same time to leave him the unrestricted right of disposing of it by his own act.
Let us now, by an inspection of the article, ascertain from its language what was the intention of its framers. Though it may be a labor barren of interest and attractiveness, yet it seems to be necessary. Section 1 provides that every householder or head of a family shall be entitled to hold his property, to be selected by him, not exceeding the value of $3,000, in addition to what is exempted by the poor laws, “exempt from levy, seizure, garnisheeing, or sale under any execution, order or other process.” It does not declare that his property shall be exempt absolutely as by the laws known as “the poor laws.” But he shall be entitled, not required, to hold it exempt. If he chooses he may hold it exempt. He cannot be compelled to do it. There is no power vested in his wife or children, or other member of his family, to require him to hold it exempt.
He shall be entitled to hold exempt. Not his wife or children shall be “entitled,” but he personally. It is a discretion or privilege wholly conferred on him.
And it does not entitle him to hold it exempt in general, but only from sale under any execution, order or other process. It evidently has reference to sales by judicial procedure, or under legal process, as contradistinguished from sales by his own act, as by mortgage, deed of trust, pledge, or other security created by his own act.
This is made plain by section 3, where it is expressly declared that “nothing contained in this article (in no section of it, nor in all the sections taken together) in this article, shall be construed to interfere with the sale of the *property aforesaid, or any part thereof, by virtue of any mortgage, deed of trust, pledge or other security thereon.”
But it is contended that this third section means only sales made under mortgages, &c., which were executed prior to the setting apart of the property by deed of homestead; or if subsequent, not for antecedent debts. My answer is, there is no such restriction or qualification in the language of the instrument, and no language employed which implies such an intention as either by the framers of the constitution. The language is general, “any mortgage, deed of trust, &c.,” which embraces all mortgages or other securities, whether given before or after the deed of homestead, and whether given for antecedent or 'subsequent debts. And it is further ■ objected that the section does not applv to property which has been set apart by" deed of homestead, so as to inhibit an interference with its sale under deed of mortgage, &c. The language is, “of the property aforesaid, or any portion thereof.” In section 3, next preceding, it is provided that “the foregoing section (section) shall not be construed as subjecting the property hereby exempted, or any portion thereof, to any lien by reason of any execution levied on property which has been subsequently restored to the defendant,” or to other lien described in the section.
The property herein mentioned, which shall not be subjected to the liens described in the section, is unquestionably the same property which is referred to in the third section as the “property aforesaid.” The property, which is not to be subjected to the liens mentioned in section 3, is “the property hereby exempted,” which can only be the property which has been selected and set apart by the householder by his deed of homestead, for until that is done it is not exempted. And this is the property which, as declared in the third section, that nothing in the homestead article shall be construed to interfere with the sale of, under mortgage, deed of trust, &c.
*But if the provision is not made with reference to the property exempted by the homestead, to what property of the householder can it apply? If it should lie said that it applies to the property which by the first section he is entitled to hold exempt from execution, that cannot be known as exempted property, and it is not, in fact, exempted property until it is set apart by the deed of homestead, and after being so set apart and exempted, it may lie sold under any mortgage, deed of trust, pledge or other security, whether given before or after it is so set apart by the owner; for the language is broad enough to embrace both descriptions, and there is no exception or qualification. And I think it will be seen in the further investigation of the subject that this interpretation is consistent with the whole scope of the homestead article, and with all its parts.
I find nothing contained in this article which shows an intention to divest the householder and head of a family of his property, and of the unrestricted right to dispose of it as he chooses — nothing, which by express terms or by implication, divests him of his title, and vests it in his wife and children, severally or jointly with himself. If it could be construed to divest him of his property and to vest it in others, it would operate to vest in persons, if he had no wife or children, who bore to him no such relation —to any who might constitute his family, though not even of his kindred. Such cari hardly be conceived to have been the intention. It is plain that the whole purpose and intent of the article was to enable the owner of the property, if he desired, for the benefit of his family, to hold so much of it exempt from execution or other legal process as did not exceed in value $3,000. There is not a sentence or syllable in the whole article which indicates a purpose to deprive the owner of the property of his jus disponendi, or to hold it exempt *from seizure and sale, except under execu *31 tion, order or other judicial process. Nor is there in the deed of homestead which he is authorized to make by the act of assembly pursuant to the fifth section of this article of the constitution. It is not an alienation of his property. It does not divest him of his title and vest it in others. It is.merely designed to set apart — to designate the portion of his property which he claims to hold under the homestead provision of the constitution, exempt from seizure and sale under any execution, order, or other legal process, and to give notice of it to the world.
But it is contended that although the title does not pass by his deed of homestead from himself to others, it is a covenant on his part to hold it for himself and others, and that he cannot afterwards alien or encumber it. There is no express trust. If it can be implied, what is the object and purpose of the trust? It cannot exceed the powers vested in the householder by the constitution; that is, to hold it exempt only from execution or other legal process. He is not required to hold it for the uses of the trust, exempt from sale under mortgage, deed, of trust, pledge or other security, to which he may choose in the exercise of his jus disponendi to subject it. The sale or encumbrance of the property by the owner himself, after he has executed the deed of homestead, is not incompatible with such a declaration of trust. His agreement to hold it exempt from levy, seizure .and sale under execution for the benefit of himself and family, as he is authorized to do by the constitution, does not forbid his making .sale of it, or encumbering it. Such an inhibition might not be for the benefit of his family. It might be seriously to its advantage. The right to alien or encumber might be necessary. to give him credit, or the means of providing for his family’s subsistence, whilst a sale under execution or other process would take it away from his family without yielding anything in return *to contribute to its support. The effect might be the same of a sale under mortgage to satisfy antecedent debts. But that would be no worse than a sale under mortgage which was executed prior to his deed of homestead. And it is conceded that he could not hold his homestead exempt from sale under prior mortgage. The framers of the constitution seem to have considered that there were grounds for a distinction between sales under execution or other legal process and sales made under mortgage or deed of trust, or other securities created by the act of the party. Hence they authorized the owner of the property to hold it exempt in the one case whilst they did not in the other. And now, if after the execution of the deed of homestead, the householder must be regarded as holding the property in trust for the benefit of himself and family, it is only that it may be exempt'from sale-under execution, or other process (for no other , exemption is authorized by the constitution) and does not and was not intended to interfere with his right to alien or encumber the same.
The fifth, section does riot vest the homestead in his family. It only authorizes the legislature to prescribe in what manner and on what conditions he may set apart and hold for the benefit of himself and family a portion of his property exempt from execution or other legal process. This section was designed to provide for carrying into execution the homestead provision, which the legislature has done by chapter 183, Code of 1873, page 1168. After authorizing every hauseholder and head of a family, almost in the precise, language of the constitution, to hold a portion of his property not exceeding in value $2,000, to be selected by him, exempt from execution or other process — which evidently means judicial or legal process — it provides in section 3. that nothing in this act shall be construed to interfere with the sale of» said property, or any portion thereof, by virtue of any mortgage. *deed of trust, pledge, or other security thereon. “Other security” means, of course, security of a like character; that is, such as is created by his own act. This provision of the act is in exact conformity with the constitution.
But the legislature has gone beyond the requirements of the constitution, it seems to me, in restricting the rights of the owner of the property, by section 7 of this act, where it provides that a homestead so set apart “shall not be mortgaged, encumbered or aliened by the owner, if a married man, exi cept by the joint deed of himself and wife, executed and acknowledged after the manner of conveyance of lands of a married woman,” &c. This provision seems to be designed to protect the wife against alienations or encumbrances. by the husband without her consent, whilst such purpose is not contained within the article of the constitution, but only to entitle, the husband to afford that protection against sales under execution or other process of his property, or so much of it as was necessary for the use of his family. But. as in this case, the wife united with her husband in the deed of trust, it is unnecessary to decide this question.
It is also provided in said third section that, “in all cases where a debtor or contractor shall declare in the"body of the bond, note or other evidence of the debt or contract, that he waives as to such debt or contract the. exemptions from liability of the property which he may be entitled to hold exempt under the provisions of this act, the said property, whether previouslysetapartor not, shall then be liable to be subjected for such debt or contract, under legal process, in like manner and to the same extent as other estate of the said debtor or contractor,” &c. Tf a mere waiver by the householder of his right to exemption, after he had set apart the property which he claimed in his deed of homestead, would render the property so set , apart subject’ to ,the payment of his debt, the *conveyance of said property by mortgage or deed of .trust for the payment of the said debt, would effectually subject it to the payment of the debt. For it is in effect, and to all intents and pur *32 poses, a waiver of his. right to exemption.
The constitutionality of'this clause of the said third section of the act aforesaid was brought in question in re Joseph Solomon, 2 Hughe’s R. p. 164, and was held to be constitutional. It is true that the waiver in that case was made prior to the deed'of homestead, and the decision was only in reference to the validity of the waiver prior to the -setting apart the property claimed as the homestead; yet Chief Justice Waite, in considering the question as to the constitutionality, of this provision of the act, makes no distinction between prior and subsequent waivers. And his reasoning tends to sustain the waiver, whether made before or after the homestead deed. And the reasoning of this court in the recent decision of Reed v. The Union Bank of Winchester, 29 Gratt. 719, Judge Christian, delivering the opinion, fully "sustains the views which I have taken of the constitutional provision in relation to the homestead. Judge Christian says, speaking for the whole court: “The jus disponendi is one of the most valuable incidents of property. Without it property is of little or no value. The value which this right gives to property is a benefit to the family as well as to the head of the family. In the impoverished condition of this state the great majority of householders and heads of families do not own over $2,000 worth of property. If this could not be the basis of credit; if the head of the family is prevented by the fact that he cannot waive his homestead from obtaining credit, his family must of course suffer by it. So far from being a benefit to his family, it would seem to me a positive disadvantage to allow him to hold $2,000 worth of property upon which *he could never raise a dollar for the support of his family, or the education of his children. The true interest and real benefit to the family is, I think, to utilize the property exempted and to make it the basis of credit. This reasoning is as appropriate and as persuasive to enforce the right of the householder to dispose of his property, after it has been set apart, as before.”
These conclusions have been drawn from the homestead article of the constitution itself, seeking only to arrive at the intention and design of the instrument and its framers from the language they employed. And if it be said that the design and purpose are different from what was supposed to have been intended by the framers of the constitution, our only reply is, ita lex scripta est, and that must be our guide. It is not the province of the courts to make constitutions and laws, but to expound and enforce them as they are_ written.
I have deemed it unnecessary to go outside of Virginia to'consider the decisions upon the homestead provisions of other states, or to reconcile them with the foregoing views, there being essential differences in our homestead law and that of several of the states, as shown by Judge Christian, supra, to which I beg to refer.
Upon the whole I am of opinion to reverse' the decree of the circuit court so far as it gives precedence to the homestead deed over the deed of trust, and to affirm it so far as it is not inconsistent with this opinion.
STAPLES, J.,
was of opinion that a conveyance of or encumbrance upon the homestead by the husband, his wife uniting therein, is effectual to divest the title to'the homestead, and as that was don,e in the present case by the deed of trust, the property is liable to the claim of the trust creditor. Whether the husband may alien or encumber the homestead without the concurrence of the *wife, is a question which does not arise in this case. He did not desire, therefore, to be understood as expressing any opinion upon that question-.
MONCUE, P., concurred in the opinion of STAPLES, J.
CHRISTIAN, J., concurred in the opinion of ANDERSON, J.
The decree was as follows:
Upon the motion of the appellant, by his counsel, it is ordered that so much of the decree entered in this cause on the 22d day of March, 1878, as remands the cause to the circuit court of Mecklenburg county, be set aside; and this court proceeding to render such decree as ought to have been rendered by the said circuit court, it is decreed and ordered that the plaintiff’s bill be dismissed with costs.
Decree reversed.