# Richmond.

WILLIAMS AND OTHERS v. WATKINS AND OTHERS.

MARCH 12, 1896.

Absent, Riely, J.*

1. HOMESTEAD—*Deed Valid as to Property Sufficiently Described, Though Invalid as to Other Property.*—Although a homestead deed.may fail to sufficiently describe and value certain personal property intended to be set apart as exempt, this will not affect the validity of the deed as to other property which is accurately described and valued.

2. HOMESTEAD—*Chose in Action—Assignee—Execution Creditor.*—A householder who has set apart as exempt, under what is known as the homestead law, a chose in action, may assign the same as collateral security for a debt, and his assignee will take priority over an execution issued on a debt in which the homestead is not waived, though the assignee had notice of the execution. The property is free from the lien of the execution.

3. HOMESTEAD—*Choses in Action After Assignment as Collateral—Execution Creditor.*—A householder may claim an exemption in a debt which has been assigned by him as collateral security for a loan, and the exemption will prevail over an execution on a debt in which the homestead is not waived, and the assignee be entitled to priority over the execution creditor.

4. HOMESTEAD—*Waiver—Specific Lien—Power of Alienation—Expiration of Homestead Period—Corpus of Homestead.*—A householder or head of a family may waive the benefit of his homestead exemption, or a specified lien may be created thereon in the manner prescribed by statute, and in either event the property set apart as exempt will be subject; but, as against other debts or liens not paramount to the homestead, the householder or head of a family holds the property set apart exempt, and may alien the same at pleasure; and although a limit is fixed to the duration of the homestead, no lien attaches thereto until that time has arrived, and those entitled to the exemption have the unrestrained power of alienation. A court of equity will not require security to be given for the forthcoming of the principal of the exemption at the expiration of the homestead period.

* He had been counsel in the court below.

Appeal from a decree of the Circuit Court of Charlotte county, rendered September 23, 1893, in the chancery cause wherein the appellant was the complainant and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*James Lyons* and *M. M. Gilliam*, for the appellant.

*Thomas E. Watkins* and *M. M. Martin*, for the appellees.

HARRISON, J., delivered the opinion of the court.

The appellant, Thomas P. Williams, recovered judgment at the September term, 1892, of the Circuit Court of Charlotte county, against the appellee, Frank B. Watkins, for $600, with interest and costs, and execution was issued thereon, which came to the hands of the sheriff September 26, 1892.

On the 22d of October, 1892, appellant sued out garnishment process to subject to the payment of his judgment a bond for $1,000 due to his judgment debtor from John H. Overby, and secured by deed of trust on certain real estate of said Overby.

This garnishment process was served on the appellee, and on the trustee in the deed securing the debt, on the 24th of October, 1892.

The trustee, for the purpose of satisfying the Overby debt, advertised the trust subject to be sold on the 8th of February, 1893, and appellant filed his bill, and subsequently an amended and supplemental bill, praying for an injunction, which was granted, restraining the trustee from selling, or attempting to execute said trust deed, until the further order of the court.

At the September term, 1893, this injunction was dissolved

and the bills dismissed. The petition for appeal from this decree sets forth the same case as that made in the original and amended bills, and can be disposed of by considering the following propositions.

The appellee, being a householder and head of a family, made and executed on the 20th of January, 1893, a deed claiming as his homestead, first, the bond for $1,000 due him from John H. Overby, which appellant was seeking to subject, less $425, part thereof, theretofore assigned to the Charlotte Banking and Insurance Company; and, second, all his (appellee's) "household and kitchen furniture."

On the 26th of August, 1893, appellee made and executed another deed, claiming as his homestead the same property set apart in the first deed. The object of this second deed seems to have been to enlarge and correct the first. In it the Overby debt is again fully described and claimed, and the valuation of $100 affixed to the household and kitchen furniture.

It is insisted that these deeds must be declared null and void, because each fails to list the household and kitchen furniture thereby conveyed, and affix a cash valuation to each item thereof.

The Overby bond of $1,000 being alone the subject of controversy here, and that being fully and accurately described in both deeds, it is unnecessary to decide whether the general description of "all my household and kitchen furniture" is a sufficient compliance with the statute, for, if it were not, the defect would not invalidate the whole deed and deprive the claimant of his entire homestead. Upon well settled principles the deed will be upheld to the extent that the property selected as homestead is listed therein in the mode prescribed by law. In each deed the Overby bond being claimed as homestead and fully described as required by statute, both are good homestead deeds to the extent of that debt.

On the 28th of September, 1892, the appellee executed a paper assigning the Overby bond to the Charlotte Banking and Insurance Company, as collateral security for a note drawn by himself, and endorsed by Thomas E. Watkins, for $425.

On the 13th day of February, 1893, after the first homestead deed had been made, appellee executed another paper assigning the Overby bond to the Charlotte Banking and Insurance Company as collateral security for other notes aggregating $340.93.

It is insisted by the appellant that the bank, at the time these assignments were made, had full notice of the existence of his lien, and therefore took said assignments subject to his superior and paramount right by virtue of his execution lien on the Overby bond. This contention, certainly as to the first assignment, is not sustained by the facts. The cashier states positively that the Charlotte Banking and Insurance Company had no notice of such lien, and that he did not know of the existence of such debt at the time the first assignment was made; that prior to taking the last assignment, of February 13, 1893, he had heard of the debt, and had been told by the trustee of the injunction suit, but that he did not then know of any lien.

It thus clearly appears, by uncontradicted testimony, that as to the first assignment, which was made before the first homestead deed, and is recognized in said deed, the bank is a *bona fide* holder for value, without notice, at the time of the assignment, of the Williams lien, and is entitled to have the same paid out of the Overby bond.

It is by no means clear that the bank had notice of the Williams lien when the second assignment was made, but, be that as it may, the right of the bank to the amount due under that assignment is not affected by said lien, because at the time said assignment was made appellee had claimed the pro-

perty assigned as a homestead, and held it free from the lien of appellant, and had the right to pledge it as security for the purpose of raising money. *White* v. *Owen*, 30 Gratt. 43.

It was appellee's homestead estate that he assigned the second time. The bank was not concerned to know what claims existed against the appellee prior to the date of the homestead deed, but was only interested, at that time, in knowing that the property pledged had been claimed and was held as a homestead, exempt from such claims.

Appellant, ignoring the first homestead deed of January, 1893, and relying upon the last deed of August, 1893, which was merely supplemental to the first, insists that appellee has claimed, as homestead, property that did not belong to him and had already been assigned to the bank.

What has already been said is sufficient to show that this position is not sound. If, however, the only deed was that of August, 1893, the contention of appellant would be equally untenable, for each of the assignments to the bank states expressly on its face that the Overby bond is assigned as collateral security for the money borrowed from the bank. Appellee had the right at any time to redeem this pledge of the Overby bond by paying his debt to the bank, and in that event the Overby bond would be completely protected to him by his homestead deed. He still held the bond, and only parted with his property right in it so far as necessary to secure the bank the money loaned him ; and, by pledging the bond as collateral, he did not part with his right to claim it as homestead, subject to the prior rights of his assignee therein.

Finally, it is insisted by appellant that the homestead is a mere personal privilege, to be enjoyed during the time prescribed by law for its continuance, and that when the privilege expires by the expiration of the period fixed for its duration, then the property in which the exemption was claimed

becomes subject to all the liens which affected it before the homestead was claimed, and that it was the duty of the court to take charge of the homestead and secure to appellant the *corpus*, as a fund from which his debt could be paid when the homestead period expired.

The general rule is that a debtor may (his wife concurring, where by statute such concurrence is required) sell his homestead and deliver possession to his alienee, without subjecting it to his general debts, or to any lien not made specific by a valid contract. Thompson on Homesteads, sec. 455.

It has long been settled in this State that the homestead may be waived and thus made subject to debt, which is but a form of disposing of it. It is equally well settled that those claiming the homestead may encumber it by specific lien, and thus subject it to sale and alienation, completely divesting themselves of the title to the homestead. *White* v. *Owens et als., supra.*

After prescribing the time during which the exemption shall last, sec. 3649 of the Code of 1887 provides that the lien of a judgment, or decree for money, rendered against a householder, and which is not paramount to the homestead exemption, shall, as to the real estate held as exempt by him, his widow or minor children, attach to such only of that estate as he may be possessed of or entitled to at the time the exemption thereof ceases, as aforesaid, and until that time the said lien shall not be enforced. This statute clearly contemplates that, even in the case of real estate, the householder may alien his homestead, free from liens that are not paramount thereto. Much more would this be true in the case of personal estate, which is of a transient and unstable character.

If the homestead could not be disposed of, or used as a basis of credit, it would be of little value to those dependent upon it. To restrict the right of alienation would practically defeat the humane purpose of the Constitution in making

this provision for the needy and helpless. The policy contended for by appellant would compel the homestead claimant to give bond and security to have the *corpus* of the homestead forthcoming at the expiration of the homestead period, which he could not do, or else tie the homestead up for an indefinite period, to be administered by the court as a trust estate. It is manifest that this was not intended by the framers of the Constitution. The provision was intended for the benefit of the claimant and his family. This use and enjoyment, as well as considerations of public policy, require that there should be unrestrained power of alienation in those entitled to the exemption.

For the foregoing reasons, we are of opinion that there is no error in the decree appealed from, and it is affirmed.

*Affirmed.*