**Richmond.**

### J. & E. MAHONEY *v.* JAMES AND OTHERS.

January 7, 1897.

1. HOMESTEAD—*Fraudulent conveyance—Insurance premiums paid by insolvent debtor.*—Where a conveyance has been set aside as fraudulent, at the instance of a creditor, the debtor has the same right to claim a homestead in the property fraudulently conveyed as if there had been no such conveyance; and the same is true where the alienee or beneficiary is required to account for the value of the property so fraudulently disposed of by the debtor, and this right extends to the widow and infant children of an insolvent debtor.

   *Quære:* If premiums on a life policy are paid by an insolvent debtor out of funds which would be exempt to him as a laborer, or which he might claim as exempt under the homestead law, can a creditor subject the insurance money, to the extent of the premiums, against the claim of homestead asserted by the widow and infant children of the deceased debtor?

2. HOMESTEAD—*Bond for forthcoming of corpus.*—In the absence of a statutory requirement, the widow and infant children of a householder ought not to be required, at the instance of a creditor of the householder, to give bond and security to have the *corpus* of the homestead forthcoming at the termination of the homestead period.

Appeal from a decree of the Hustings Court of the city of Portsmouth, pronounced January 25, 1895, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Amended and affirmed.*

J. C. James became indebted to the complainants between October 31, 1889, and March 13, 1890, in the sum of $496.86, for goods, wares, and merchandise. The debt was evidenced by an open account, upon which judgment was rendered in favor of the complainants in the spring of 1891. On the 24th day of August, 1888, James took out a policy

on his life in the Maryland Life Insurance Company for the sum of $5,000 for the benefit of his wife and only child. J. C. James failed in business and became insolvent in March, 1889. After that time he was employed by the trustee to whom he had made a deed of assignment, at a salary of $60 per month, and out of this salary he paid the insurance premiums on his life policy, at the rate of about $200 per year, until February, 1892, after which latter date the premiums were paid by his wife, one of the beneficiaries in the policy. The complainants filed their bill against the widow and infant child (uniting other necessary parties) for the purpose of subjecting to the payment of their debt the amounts which had been paid out by J. C. James for premiums of insurance after their debt was contracted. They charged in their bill that the payments thus made on account of premiums were gifts by J. C. James to his wife and child, while he was insolvent, and that they were void as to the debt of the complainants; and they therefore prayed that the insurance money received by the widow and infant might be subjected to the extent of the premiums paid by J. C. James, while insolvent. The widow and infant defended on the ground that J. C. James was a laborer, and that there was exempt to him $50 per month for wages, and, inasmuch as the premiums were paid out of these wages, they could not be subjected. They also claimed that if the payments be treated as gifts, they, the widow and infant child of J. C. James, had a right to claim the premiums under the homestead law, and prayed that such premiums be set aside to them as a homestead in the estate of J. C. James. The widow and infant child of James had, by deed for that purpose, claimed a homestead in said premiums before the institution of the suit, and they filed the homestead deed in the cause.

At the hearing the court decreed that the widow and infant child were "entitled to hold the fund in the bill and proceedings mentioned as and for their homestead exemption,

free from levy, seizure, or sale, until said right of homestead shall cease and determine, according to the provisions of chapter 178 of the Code." But the court also decreed that they should "execute a bond payable to the Commonwealth of Virginia, conditioned to have said fund forthcoming at the determination of said right of homestead exemption therein, to be disposed of according to the provisions of chapter 178 of the Code."

From this decree the present appeal was taken.

*G. M. Dillard,* for the appellants.

*Alexander E. Warner,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The question in controversy in this case is the right of the appellants to collect from the appellees, A. P. James and John C. James, the widow and only child of J. C. James, deceased, a debt due from his estate. The debtor left no assets, and had been insolvent for several years prior to his death. Before he became insolvent he insured his life for the benefit of his wife and child. During a portion of the time that he was insolvent he paid the premiums on the policy out of his monthly wages. After his death the money due upon the policy of insurance was paid to his widow and child. The appellants claim the right to subject in their hands, or to compel them to pay in satisfaction of the debt of appellants, a sum equal in amount to the premiums paid by their debtor on the insurance policy during the period he was insolvent, upon the ground that the payments made were voluntary and therefore void. The defence set up by the widow and son was:

1st. That premiums paid by the debtor were paid out of his earnings, a salary of $60 per month, of which sum $50

was exempt from distress, levy, or garnishment under section 3652 of the Code; and

2d. That as against the debt of the appellants they were entitled to an exemption not exceeding $2,000 out of the decedent's estate as a homestead.   Code, sec. 3630.

The trial court held that they were entitled to claim the fund in controversy as a homestead until their right to a homestead in the debtor's property should cease under the provisions of chapter 178 of the Code, and required the widow to give bond to have the fund forthcoming when the right to such homestead terminated.

It may well be doubted whether premiums paid by the insolvent debtor on the insurance policy for the benefit of his wife and child out of his earnings, five-sixths of which were absolutely exempt from distress, levy, or garnishment, and the whole of which, if he had remained in possession of it, might have been held by him as his homestead free from levy, seizure, or sale by claiming it in the manner prescribed by law could be considered, in the absence of an actual fraudulent intent, such an alienation of his property as appellants could complain of.   Wait on Fraudulent Conveyances (2d ed.), sec. 46; Bump on Fraudulent Conveyances (4th ed.), sec. 220; 3 Minor's Insts., 1191; *Central Nat. Bank* v. *Hume*, 128 U. S. 195.

It is unnecessary, however, to decide this question, for even if it were such a disposition of his property as the law condemns, and which the widow and son, who had received the benefit of it, must account for, to the extent of the premiums paid during his insolvency, still they would be entitled to claim the fund as a homestead, and thus defeat the appellants recovery in this suit.

If the money paid by the insurance company to the widow and son, to the extent of the amount of the premiums paid by the debtor when insolvent, was the debtor's property which he had fraudulently disposed of, or was a sum which

*ex æquo et bono* they ought to account for, the appellants' right to subject it to the payment of their debt could not be any greater than it would have been if the debtor had not paid the premiums, and had retained the money until his death, or, having paid them, a sum equal thereto had been returned to his estate by his widow and son. The claim of homestead set up by the widow and son would have been good as to the money thus retained or returned, for the debtor had not waived his right to a homestead exemption as to the appellants' debt.

It is the settled law of this State that where a fraudulent alienation of property by the debtor is set aside at the instance of the creditor, the debtor has the same right of homestead in such property as between him and the creditor as he would have had if there had been no such alienation. *Shipe, Cloud & Co.* v. *Repass*, 28 Gratt. 716; *Boynton &c.* v. *McNeal, &c.*, 31 Gratt. 456; *Marshall* v. *Sears' Ex'or*, 79 Va. 49; *Hatcher* v. *Crews*, 83 Va. 371.

And the same must be true where the alienee or beneficiary is required to account for the value of the property so fraudulently disposed of by the debtor. The only ground upon which the creditor can claim the right to subject it to the payment of his debt is that as between them it is the debtor's property. The interest which the creditor has in it by virtue of his claim is derived through his debtor, and he can have no greater right to subject it to his debt than if the debtor had never aliened it, or having aliened, its value had been returned to him. The creditor's rights are subject to the homestead rights of the debtor and his family where he has not waived them.

In the case of *Clendenning* v. *Conrad*, 91 Va. 410, the Circuit Court set apart the sum of $2,000 to the householder as a homestead to be paid to him out of the proceeds of the sale of his property which was ordered to be sold for the benefit of his creditors. Before the money was paid over to him he

died leaving infant children.    The court directed its receiver
to pay the money so set apart as a homestead to his children,
and afterwards, at the instance of a creditor, directed their
guardian to give bond and security for the forthcoming of the
*corpus* of the homestead at the expiration of the homestead
period.    The proceedings referred to were all prior to May
1, 1888, the time when the provision of the Code of 1887
went into effect.    No question was raised upon the appeal in
that case as to the propriety of the order requiring the guar-
dian to give bond to have the *corpus* of the homestead forth-
coming, nor was the question considered by the court.    Since
that decision the case of *Williams* v. *Watkins*, 92 Va. 680,
has been decided.    The case was maturely considered, and
the conclusion reached that the householder himself ought
not to be required to give bond and security to have the *cor-
pus* of the homestead forthcoming at the expiration of the
homestead period.

There is no provision in the statute requiring the widow,
or the guardian of the infant children of the householder, to
give bond and security for that purpose.    To require them to
do so would in many, if not in most, cases defeat the very
objects which the homestead law was intended to accomplish.

A majority of the court are of opinion, under the liberal
rule which should govern in the construction of such laws,
that the courts ought not to require such bonds from the
widow and children of the householder or head of a family
after his death, in the absence of a statutory provision requir-
ing it.

It follows from what has been said that the decree appealed
from must be amended in so far as it requires bond and secu-
rity for the forthcoming of the *corpus* of the homestead, when
the right to it expires, by striking out that portion of the de-
cree, and, as amended, be affirmed.

*Amended and affirmed.*