# Wytheville.

Oppehheim, Satterwhite & Co. v. Henry Myers and Others.

July 4, 1901.

1. Homestead—*Fraudulent Deeds—Estoppel.*—Grantors in deeds set aside as fraudulent at the instance of their creditors are not estopped from claiming a homestead exemption in the property conveyed, if otherwise entitled thereto.

2. Homestead—*"Householder" or "Head of Family"—Constitutional Law.*—Article XI. of the Constitution of this State, relating to homestead exemptions, is not self-executing, but is carried into effect by chapter 178 of the Code. The terms "householder" and "head of family," as used in the Constitution and statutes passed in pursuance thereof, are convertible terms, and are employed as explanatory the one of the other. They involve the idea of dependence and support, coupled with a legal or moral obligation to support the dependent.

3. Homestead—*Married Women—Householder or Head of Family.*—A married woman whose husband lives out of the State but visits her at intervals of two or three years, and occasionally makes her small remittances of money, and who has no children dependent upon her for support, is not a householder or head of a family in contemplation of the Constitution and the statutes passed in pursuance thereof.

4. Homestead—*Art. XI., Section 3, Constitution—Other Security—Judgments.*—The "other security," referred to in section 3, Article XI., of the Constitution of this State, which is declared to be paramount to the homestead exemption, is security of a like character with those mentioned in that section, that is, such as is created by the act of the debtor himself. It does not embrace judgments which are securities created by law. *Kennerly* v. *Swartz*, 83 Va. 704, overruled; *White* v. *Owen*, 30 Gratt. 43, approved.

5. Homestead—*Fraudulent Deeds—Lien by Filing Bill—Code, Sec. 2460.*—After a bill was filed to set aside as fraudulent a deed made by a married woman, her husband died leaving infant children depend-

ent on their mother for a support. The deed was set aside as
fraudulent and the widow claimed the homestead.

*Held:* The right of the widow to claim the homestead is superior to
the lien given creditors by section 2460 of the Code on filing their
bill.

6. CONTRACTS—*Statutes as Parts Of.*—Legislative enactments should be
read into contracts made and obligations assumed after their enact-
ment.

Appeal from two decrees of the Circuit Court of Bedford
county, pronounced October 26, 1899, and June 2, 1900, re-
spectively, wherein the appellees were the complainants, and the
appellants were the defendants.

*Reversed in part.*

The opinion fully states the case except as to the claim of Mrs.
Oppenheim. She was a member of the firm of Oppenheim,
Satterwhite & Co., which was embarrassed to insolvency. She
conveyed to her husband, as trustee for their infant children, an
undivided two-thirds interest in a house and lot in Bedford City,
Va. This deed was assailed by creditors of the firm as in fraud
of their rights. The court so held. Mrs. Oppenheim's husband,
Jacob Oppenheim, had been the active manager of the business
of Oppenheim, Satterwhite & Co., and was still living at the date
of decree setting aside the deed as fraudulent. He supported the
family. Just before the deed was set aside, he and his wife,
who described themselves as " householders and the head of a
family," and residents of the county of Bedford, in the State of
Virginia, executed and put to record a deed bearing date October
18, 1899, by which they "declare their intention, severally and
jointly to claim the benefit of the homestead exemption" in said
house and lot. On October 26, 1899, Oppenheim and wife filed
their petition in the cause claiming a joint and several homestead
in the property, and filing the above mentioned deed as an
exhibit. At this term, the court set aside the deed made by Mrs.
Oppenheim to her husband, as trustee, on the ground of fraud,

and referred the cause to a commissioner to take certain accounts. Before the next term of the court Jacob Oppenheim died, leaving his wife and two infant children surviving, and, at the succeeding term, Mrs. Oppenheim filed an amended petition, setting out the death of her husband and the dependence of her two infant children on her, and claiming the benefit of the homestead. No new homestead deed was made. The creditors insisted that they acquired a lien by filing their bill to annul the deed made by Mrs. Oppenheim to her husband, as trustee, and that as this lien was acquired before Mrs. Oppenheim became a widow, or had the right to claim a homestead, their claim was a security superior to the claim of homestead.

*Campbell & Tucker* and *G. J. Holbrook*, for the appellants.

*Graham Claytor*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Bedford county. The controversy involves the right of Letitia A. Satterwhite, a married woman, and W. J. Oppenheim, a widow, to have set apart to each her respective interest in a house and lot as a homestead exemption. In the year 1890 these parties engaged as partners in the retail liquor business. The firm became indebted to insolvency; and subsequently, by separate deeds, Mrs. Satterwhite, who owned a one-third undivided interest, and Mrs. Oppenheim, who owned the remaining two-thirds interest in the house and lot, conveyed it to the husband of Mrs. Oppenheim as trustee for the benefit of the infant children of himself and wife, and upon other trusts.

A bill was filed by social creditors to set aside these conveyances as voluntary, and made with intent to hinder, delay, and defraud the creditors, and to subject the property to sale.

The court set aside the deeds, and thereupon the grantors

claimed their interests in the house and lot as homestead exemptions. Oppenheim and wife first preferred a joint claim to her interest as a homestead; and, subsequently, the husband having died, the widow filed a petition asking that her interest be set apart to her as a homestead exemption.

The question of their right to a homestead exemption was referred to a commissioner, who reported adversely to the claim of Mrs. Satterwhite, and favorably to that of Mrs. Oppenheim. Exceptions were taken to the report by Mrs. Satterwhite and by creditors.

The court decided that neither claimant was entitled to an exemption, and decreed a sale of the property, and from that decree this appeal was taken.

The action of the lower court in setting aside these deeds as fraudulent is fully sustained by the evidence. They were shown to be voluntary, and made at a time when the grantors were insolvent, for the evident purpose of shielding the property from the demands of creditors.

The deeds having been set aside, the grantors, if otherwise entitled, were not estopped from claiming an exemption in the property. Whatever view might have been taken of this proposition originally, it is too firmly established now by repeated decisions of this court to be called in question. *Shipe* v. *Repass*, 28 Gratt. 716; *Boynton* v. *Neal*, 31 Gratt. 456; *Marshall* v. *Sears*, 79 Va. 49; *Hatcher* v. *Crews*, 83 Va. 731; *Mahoney* v. *James*, 94 Va. 176.

The constitutional provision for homestead exemptions is embodied in Article XI. It is not self-executing, but section 5 declares that "the General Assembly shall, at its first session, prescribe in what manner and on what conditions the householder and head of the family shall thereafter set apart, and hold for himself and family, a homestead out of any property thereby exempted. * * * * But the section is not to be construed

as authorizing the General Assembly to defeat or impair the benefits intended to be conferred by the provisions of the article."

The statute passed in obedience to that section is found in chapter 178 of the Code. The Constitution, as has been seen, declares that "every householder or head of a family" shall be entitled to claim the exemption, while the statute, section 3630, provides that "every householder" residing in this State shall be entitled to claim the exemption. The terms "householder" and "head of family" are interchangeable. Section 3657, as amended by Acts 1887-'8, page 423, declares: " The word 'householder' used in this chapter shall be equivalent to the expression 'householder or head of a family.' " In this connection, they are convertible terms, and employed as explanatory the one of the other. Each signifies: "One who provides for a family"; "one who keeps house with his family"; "a master or mistress of a dwelling-house" (Bouvier's L. D., Titles "Head of a Family," and " Householder").

The Century Dictionary gives as the primary meaning of the word " householder," "the master or chief of a family; one upon whom rests the duty of supporting or governing the members of a family or household." Century Dict., " Householder."

In the case of *Calhoun* v. *Williams*, 32 Gratt. 18, the term was held to signify one who occupies such a relationship towards persons living with him as to entitle them to a legal or moral right to look to him for support.

The relation of dependence and support, coupled with a legal or moral obligation to support the dependent, constitutes the one upon whom the burden is cast, the head of a family, and entitles such person to the benefit of the exemption.

That case also decides that where there is no family, there can be no homestead.

Considering first the right of Mrs. Satterwhite to a homestead

exemption, it appears that she is a married woman, residing in Virginia, and her husband in Mexico; that he has been accustomed to visit her at intervals of two or three years, and occasionally made small remittances of money; that they have six children, all of whom are of age, most of whom are married, and none of whom is dependent upon her for support. Without pretending to decide that a married woman can under no circumstances claim a homestead exemption, it is apparent, in the light of the definitions, tests, and authority given above, that Mrs. Satterwhite is not a householder or head of a family in contemplation of the Constitution and statutes passed in pursuance of it.

There is no error, therefore, in the decree of the Circuit Court which denied her the right to claim a homestead exemption.

Mrs. Oppenheim, on the other hand, at the time she filed her last petition, was a widow with two infant children, who lived with and were wholly dependent upon her for support. That these conditions constitute her a householder or head of a family, both within the letter and spirit of the Constitution and section 3630 of the Code, is perfectly clear.

It is contended, however, on behalf of appellees, that inasmuch as this suit was brought under section 2460 of the Code, as amended, it gave creditors a lien on the interest of Mrs. Oppenheim, in the property in controversy, from the date of the filing of the bill; that the lien given by that section attached to the property before the death of Mrs. Oppenheim's husband, and, therefore, before she became a householder or head of a family; that this lien was a "security" within the meaning of section 3 of Article XI. of the Constitution, and paramount to the claim of homestead. The case of *Kennerly* v. *Swartz*, 83 Va. 704, is relied on to sustain this contention.

That case does decide that a judgment recovered against a debtor, who afterwards became a householder or head of a family, constituted such *a security* as is superior to the right of the judgment debtor to a homestead exemption in land which he

owned at the date of the recovery of the judgment. In the opinion, no reference is made to the case of *White* v. *Owen,* 30 Gratt. 43, in which the court went into an elaborate analysis of Article XI. of the Constitution, and decided that the phraseology, "other security," occurring in that article, "means, of course, security of a like character; that is such as is created by his (the debtor's) own act." While *White* v. *Owen* was decided by a divided court, the judges were agreed as to the correctness of that construction.

The court, in reaching its conclusion, applied the rule *ejusdem generis,* and adopted an interpretation in consonance with the humane object which the framers of the Constitution evidently had in mind when they declared, in section 7, that "The provisions of this article shall be construed liberally, to the end that all the intents thereof may be fully and perfectly carried out."

This constitutional provision has also received a legislative construction which is at variance with the interpretation placed upon section 3 by *Kennerly* v. *Swartz*; and which would be thwarted in many instances by an adherence to the rule of construction laid down in that case.

Section 3642 of the Code provides that, "the real or personal estate which a householder, his widow, or minor children are entitled to hold as exempt, may be set apart at any time before the same is subjected by sale or otherwise under judgment, decree, order, execution, or other legal process."

It is proper that this legislative declaration should be read into contracts made and obligations assumed since its enactment. In the light of it, it is apparent that the proper construction of section 3, Article XI., was reached in the case of *White* v. *Owen.*

This court sanctions and approves that interpretation as to the true effect and meaning of the phrase *"other security"* in section 3; and disapproves and overrules the conclusion in the later case of *Kennerly* v. *Swartz.*

Opinion.

It follows from these views, that the Circuit Court erred in denying to Mrs. Oppenheim the homestead exemption claimed by her; and for that error the decree appealed from must be reversed, and the cause remanded to the Circuit Court for further proceedings to be had therein in conformity with this opinion.

*Reversed in part.*