### In re W. C. ALLEN & CO.

#### (District Court, W. D. Virginia. December 22, 1904.)

1. BANKRUPTCY—PROCEDURE—CLAIM OF HOMESTEAD EXEMPTION.

The determination of a bankrupt's claim to a homestead exemption by the referee before the appointment of a trustee, although informal, and not in accordance with the regular course of procedure, may be sanctioned by the court in the exercise of its equity powers, where it appears that the bankrupt has no property except that involved in the claim; so that, if the exemption should be allowed, there would be no occasion for the appointment of a trustee.

2. SAME—JURISDICTION OF BANKRUPTCY COURT—PENDENCY OF SUIT IN STATE COURT.

Pending a suit by creditors in a state court to set aside a conveyance by the debtor as fraudulent, and before decree or pleading by the defendant therein, the defendant obtained a reconveyance of the property, executed a deed of homestead thereon in accordance with the law of Virginia, and filed a petition in bankruptcy, on which he was adjudicated a bankrupt. The Constitution of Virginia of 1902, § 191 [Va. Code 1904, p. cclxxi], provides that the homestead exemption shall not be claimed or held "in any property the conveyance of which by the homestead claimant has been set aside on the ground of fraud or want of consideration."

*Held,* that the pendency of the suit in the state court did not deprive the court of bankruptcy of jurisdiction, nor relieve it of the duty to determine the claim of the bankrupt to his homestead exemption, since such question is not in issue in that suit.

3. HOMESTEAD EXEMPTION—VIRGINIA CONSTITUTION—EFFECT OF FRAUDULENT CONVEYANCE.

Under Const. Va. 1902, § 191 [Va. Code 1904, p. cclxxi], which provides that a homestead exemption "shall not be claimed or held * * * in any property the conveyance of which by the homestead claimant has been set aside on the ground of fraud or want of consideration," in view of the Virginia decisions under the prior law, where there has been a conveyance by a head of a family, a reconveyance and claim of homestead in the property made prior to a decree setting aside the conveyance as fraudulent is sufficient to make the claim a valid one, although a creditor's suit to set aside the conveyance for fraud was instituted prior to the reconveyance, and was then pending.

4. BANKRUPTCY—CLAIM TO HOMESTEAD EXEMPTION—HEARING.

The question whether a bankrupt had made a fraudulent conveyance of property which would bar his right to a discharge is not properly triable on the hearing of his claim to a homestead exemption.

5. SAME—WAIVER OF EXEMPTION—STAY OF PROCEEDINGS PENDING SUITS IN STATE COURTS.

Where creditors of a bankrupt hold obligations containing a waiver of the right of homestead exemption, the bankruptcy proceedings may be stayed until the rights of such creditors have been determined in a state court.

In Bankruptcy. On petition of W. C. Allen for review of a ruling of the referee of August 10, 1904, refusing to allow said bankrupt's claim of homestead exemption.

R. L. Gardner, for creditors.
F. W. Morton, for bankrupt.

McDOWELL, District Judge. On April 7, 1904, one W. C. Allen filed a voluntary petition in bankruptcy, alleging that he and one J. A. Allen had been partners in business under the firm name of W. C. Allen & Co., with which were filed schedules of the liabilities and assets of the firm and of said W. C. Allen. The petition prayed that the firm be adjudicated a bankrupt, but did not pray that W. C. Allen be so adjudicated. An opinion sent to counsel for W. C. Allen April 9, 1904, reads in part:

"This petition, which is filed by W. C. Allen, one of two partners composing the firm of W. C. Allen & Co., prays that the firm be adjudicated a bankrupt. J. A. Allen, the other partner, is not a party to the petition, and the petition does not contain the allegations necessary to make it proper to adjudicate the firm an involuntary bankrupt. I think it would be clearly improper to adjudicate the firm a bankrupt under this petition. Except for the fact that the petition does not pray that W. C. Allen be adjudicated a bankrupt, it is perhaps sufficient in its statements to authorize such an adjudication. However, the petition is, as above stated, informal, and, for fear I should misunderstand the desire of the petitioner, I think it best that the petition be dismissed, without prejudice to the rights of the petitioner."

And because of the doubt therein expressed an order was entered on April 9, 1904, dismissing the petition without prejudice.

On April 16, 1904 (J. A. Allen having in the meantime filed a petition and schedules, and as it was informally made to appear that the part-

ners wanted the firm and themselves as to the firm debts adjudicated bankrupts), an order was entered setting aside the order of April 9th, and adjudicating the firm and both members thereof, as to the firm debts, bankrupts. In the schedules filed with the petition of W. C. Allen is a claim of homestead in the land and personal property now in dispute, which is of less value than $2,000, the amount allowed in this state, and is described as having been conveyed by W. C. Allen et ux. to one W. J. Allen, and reconveyed by W. J. Allen to said W. C. Allen. A proper deed of homestead was executed by W. C. Allen, and admitted to record on April 6, 1904. The deed from W. C. Allen et ux. to W. J. Allen was made January 9, 1904, and the reconveyance was made April 2d, and admitted to record April 6, 1904. Proceeding under section 2460 Code Va. 1887 [page 1214, Ann. Code 1904], certain of the creditors of W. C. Allen & Co. instituted a suit in chancery on February 13, 1904, in the circuit court of Pulaski county, to have the deed made by W. C. Allen et ux. to W. J. Allen set aside for fraud and want of consideration, and the property therein conveyed subjected to the claims of the said creditors. Later sundry other creditors filed petitions as authorized by said section of the Code. Commencing February 13th, memoranda of lis pendens were filed and docketed in the proper clerk's office. So far as appears, no defense of any sort has been set up by Allen, no evidence has been taken, and no decree has been rendered by the state court. While no stay order has been made by this court, the parties have apparently tacitly agreed not to move in the state court until some order is made in this court touching the question here raised. At the first meeting of creditors held before the referee in bankruptcy on May 14, 1904, sundry claims were filed and proved, and objections to W. C. Allen's claim of homestead were filed with the referee in behalf of the creditors suing in the state court. This paper is indorsed "Grounds of Defense." No trustee was appointed by the creditors, and the referee entered upon an examination of W. C. Allen and other witnesses in regard to the right of Allen to have his homestead allowed. Finally, by order of August 10, 1904, the referee ruled that the objections to the claim of homestead be sustained, appointed a trustee, and directed him, after having given bond, to take charge of all the property in question, and to sell it for the benefit of the creditors.

It is contemplated by section 47, subsec. 11, Bankr. Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3439], and by General Order 17, that the trustee shall set apart the exemptions and make report of his actions; and that thereafter the creditors will file exceptions, if they wish, to such report. Such is undoubtedly the regular and orderly method of raising such question as is here sought to be raised. But, as was said in Kane's Case, 127 Fed. 552, 553, 62 C. C. A. 616, "A court of bankruptcy is a court of equity, seeking to administer the law according to its spirit, and not merely by its letter." In the case at bar, if I correctly understand the facts, there are no assets, if the property claimed as exempt be held to be such, and there was no reason for the appointment of a trustee if the claim of homestead was to be allowed. I think, therefore, that the informality of objecting to the claim of homestead prior to the appointment of a trustee need not

necessarily prevent an adjudication of the question presented to the referee.

In the Virginia Constitution of 1902 is a new provision, which has, so far as I am advised, never been construed by any Virginia court. The provision (section 191 [Va. Code 1904, p. cclxxi]) reads:

"The said [homestead] exemption shall not be claimed or held in a shifting stock of merchandise, or in any property, the conveyance of which by the homestead claimant has been set aside on the ground of fraud or want of consideration."

There is, I think, room for no doubt but that this court is given by the bankrupt act (section 2, cl. 11, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]) jurisdiction to determine the contention between the bankrupt and his creditors now presented. "The courts of bankruptcy * * * are hereby invested * * * with jurisdiction at law and in equity * * * to determine all claims of bankrupts to their exemptions." Whether or not this jurisdiction is exclusive need not now be determined. My first impression was that comity might require this court to subrogate the trustee in bankruptcy to the rights of the creditors who have sued in the state court (under section 67f of the act, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), stay the proceedings in this court, and direct the trustee to intervene in the state court and pray to be allowed to carry the case in that court to a conclusion for the benefit of the estate. But on further consideration this view does not seem warranted. It is true that the suit in the Pulaski circuit court was instituted before this court acquired jurisdiction; but the right of the bankrupt to his exemption is not now, and cannot be, except by the voluntary act of the bankrupt, involved in that proceeding in that court. If the bankrupt files no pleadings in that court, the decree by default would not involve a determination of his right of exemption. A default decree rendered by the state court would not estop the bankrupt to assert his claim thereafter in this court. It is frequently said that a judgment is binding on the parties as to every question which was or might have been adjudicated. But this frequently misunderstood statement has no application to the state of fact here. No judgment can be an estoppel as to a matter entirely outside of the pleadings, as to an issue not tendered by an unopposed bill. If the creditors could file supplemental pleadings setting up the reconveyance, the filing of the homestead deed, and praying an adjudication of the defendant's right to the exemption, it would make a new case—one instituted after jurisdiction had been acquired by this court. As, therefore, the bankrupt has submitted his case to this court, and as he can render the action of the state court in the case at present pending there nugatory, it seems clear that no principle of comity requires a useless delay and previous futile action by the state court before this court determines the claim of the bankrupt to his exemption.

Under the Constitution of 1869 there were several adjudications of the Court of Appeals of Virginia giving a debtor the right to claim and have his homestead in property which he had fraudulently conveyed. In order to get a clear idea of the state of the law at the time the new Constitution was drafted, and of the change intended to be made thereby, these decisions should be considered. In Boynton v. McNeal, 31

Grat. 456, Marshall v. Sears, 79 Va. 49, and Hatcher v. Crews, 83 Va. 371, 5 S. E. 221, the debtor, after a decree holding that a conveyance (or bill of sale) made by him was void for fraud, claimed for the first time and was allowed his homestead exemption in the property attempted to be conveyed. The reasoning of the court in the Boynton Case may be briefly summarized as follows: The homestead is for the benefit of the debtor's wife and children, and it is not right that they should be made to suffer for the wrongful act of the debtor. Again, the fraudulent conveyance being void as to creditors, it stands, as to them, as though it had never been made. See Boynton v. McNeal, 31 Grat. 459, 462. In Shipe v. Repass, 28 Grat. 716, Hurt, who had conveyed land to his son, filed a homestead deed, whereby he claimed a homestead in the purchase-money notes executed by the son. Subsequently the deed from Hurt to his son was adjudged fraudulent and void, and the court allowed Hurt a homestead in the land. In Mahoney v. James, 94 Va. 176, 26 S. E. 384, a debtor took out life insurance payable to his wife and child, and until his death paid the premiums thereon. After the debtor's death the insurance money was paid to the widow and child. Thereafter creditors of the deceased husband sued the wife and child, claiming a sum at least equal to the premiums paid by the husband, on the ground that such premium payments were, in effect, voluntary and fraudulent gifts to the wife and child. Prior to suit the widow and child filed a homestead deed, claiming the insurance money, and in their answer to the bill they asserted their right of homestead. On the assumption that the husband had, in paying the premiums, defrauded his creditors, the court held the widow and child entitled to the insurance money as a homestead. In Oppenheim v. Myers, 99 Va. 582, 39 S. E. 218, Mrs. Oppenheim, being indebted and insolvent, conveyed an interest in certain real estate to her husband. Thereafter her creditors filed suit attacking this deed as fraudulent. Just before a decree was rendered holding the conveyance void for fraud, Oppenheim and wife filed a joint homestead deed, claiming said interest in said land as their "joint and several homestead." They then filed a petition in the above-mentioned suit claiming the homestead. The trial court held the conveyance from Mrs. Oppenheim to her husband void, and referred the cause to a commissioner. Before further action by the court, Oppenheim died. Thereupon Mrs. Oppenheim (not filing any new homestead deed) filed an amended petition, claiming the same homestead for herself and infant children. The creditors claimed, as the statute gave them a lien from the time of filing their bill, which was before Mrs. Oppenheim became a widow, and before she had a right to claim a homestead, that they had a right in the land paramount to her claim of homestead. The trial court sustained the contention of the creditors, but the Court of Appeals reversed this decision.

The language of the present Constitution, "has been set aside on the ground of fraud or want of consideration," must, of necessity, refer to an adjudication of a court. The language, "shall not be claimed or held," seems to me to mean "shall not be effectually claimed." We cannot disregard the word "claim" and read the clause as if written, "shall not be held in property a conveyance of which has been set aside." Even if the clause could be so read, there are reasons for

doubting if the creditors' contention in this case could be sustained; but it is useless to discuss the question on this supposition. We must deal with the law as it is written, and we cannot suppress the word "claim" if we would arrive at the true intent. The claim of homestead in the case at bar was made prior to any adjudication, and I am unable to avoid the conclusion that, where there has been a fraudulent conveyance by a head of a family, a reconveyance and claim of homestead made prior to a decree setting aside the fraudulent conveyance is sufficient to make the claim a valid one. Under the language used by the convention, no court having jurisdiction to allow a claim of homestead can properly decline so to do unless a fraudulent conveyance of such property has been set aside at the time the claim is asserted.

The mere fact that the creditors in the case at bar obtained an inchoate lien prior to the reconveyance and claim of homestead is not sufficient. Under the first three decisions above mentioned the householder could validly claim his homestead after a decree had been rendered setting aside for fraud a conveyance, and the lien obtained by his creditors prior to such claim was held of no avail. The new Constitution is so expressed as to change this rule only to the extent that a claim of exemption made after such decree shall be unavailing. To argue that the inchoate lien gives the creditors a right superior to the claim of homestead made prior to a decree converting the inchoate lien into a perfected right not only assumes that an inchoate lien is a perfected right, but seems to beg the question. The very point at issue is whether or not the new law authorizes the court to so decree as to convert the creditors' inchoate lien into a perfected right when the claim of homestead is asserted before such decree is rendered. So, also, as to the argument that by a reconveyance made after suit filed by the creditors the claimant takes the property cum onere. He does take it subject to the rights given the creditors by section 191; but what are those rights? The language used most plainly denies the homestead only where the decree annulling a conveyance precedes the reconveyance and claim of homestead. And an intent to invalidate the claim of homestead under the circumstances here does not seem to me to be shown. While the intent of the lawmaker should be given full effect by the courts, still the supposed intent must be either expressed or fairly inferable from the words used. And under the principle expressio unius a provision which is expressly applicable to only one state of fact is not to be applied to another. If the intent which the creditors contend for had existed, I think section 191 of the Constitution would have read somewhat in this wise: "The homestead exemption shall not be claimed or held in any property which has been fraudulently conveyed by the homestead claimant." Thus expressed, the fraudulent conveyance would, when judicially ascertained, prevent an exemption of the homestead whether the property were reconveyed before or after suit by creditors, and whether the claim were made before or after decree. It is true that the rather simple device of securing from the fraudulent grantee a reconveyance and making a claim of homestead prior to an adjudication leaves the householder in the position he was in under the former Constitution. But it seems fairly to be inferred that the convention had no intention, even if the possi-

bility of such action on the part of the homestead claimant was contemplated, of preventing such a result.

No very good reason suggests itself why a householder and head of a family, who owns no property in excess of $2,000, should be denied a homestead—which is for the benefit of his family—merely because he has made a fraudulent conveyance of such property, provided his creditors are not thereby injured. I shall consider now only general creditors, and leave out of view those who have taken homestead waiver obligations and those whose claims are within the exceptions mentioned in section 190 [Va. Code 1904, p. cclxx] of the present Constitution. As to these latter creditors, the reconveyance and claim of homestead could be of no service to the debtor, and could do no harm to the creditor. Thus confining the discussion, let us first consider the case of a householder whose entire estate is of less value than $2,000. Except in view of a fact to be mentioned later, no such householder can injure the creditors we have in view by making a fraudulent conveyance of his estate. His entire estate can be shielded by simply filing a homestead deed. Such creditors of such a debtor had no right to anticipate, when giving him credit, that they could ever subject the property. And if such debtor should make a fraudulent conveyance of his property, and should thereafter, under compulsion of a creditors' suit to set aside such conveyance, secure a reconveyance and file a homestead deed, his creditors are in no worse position than that which they must have contemplated when they extended credit. The fact adverted to above, which would afford to a knavish householder circumstanced as above a reason for making a fraudulent conveyance of his estate to some member of his family or some friend, is that by so doing he might be enabled to secure a homestead in future-acquired property, and thus, in effect, shield more than $2,000 worth of property. But when the householder is forced to secure a reconveyance of, and to claim his homestead in, the fraudulently conveyed property, he is cut off from consummating any such dishonest purpose. And it may be here said that, if my views are sound, although a defense to such creditors' suit setting up the reconveyance and claim of homestead would prevent subjecting the property to the creditors' claims, the costs of suit would nevertheless be properly adjudged to the creditors. This, in theory, is compensation for the expense to which the creditors have gone in bringing their suit. The case of a householder whose estate is worth more than $2,000 needs very little discussion. If he, by pleading a reconveyance and claim of homestead in fraudulently conveyed property, succeeds in preventing a loss of his homestead, he cannot thereby prevent his creditors from subjecting the remainder of his estate. And hence in this case also the creditors of the class under discussion secure all that they had a right to expect when extending credit; i. e., satisfaction out of the debtor's nonexempt estate. It is at least probable that the convention did not contemplate such a state of affairs as we have in the case at bar. A householder having an estate over $2,000 in value would do no harm to his creditors by taking a reconveyance and asserting his right of homestead in fraudulently conveyed property. A householder whose estate is worth less than $2,000 would rarely seek to shield it from nonwaiver creditors by the silly device of fraud-

ulently conveying it (unless to secure thereby more than $2,000 exemption; and this intent is checked by the law as above construed). Hence it may be that the convention did not contemplate such a transaction. But, if so, there is every reason for refusing to strain the language used in the Constitution to make it apply to an uncontemplated and unprovided for state of affairs.

Nor can it be said that this construction leaves the law as it was under the former Constitution, and that it practically gives no effect to the new provision found in section 191. In fact, a wise and valuable change has been made in the law. It is an old rule, nowhere better established than in this state, that he who charges fraud must clearly prove it. Under the old law the creditors who attacked a conveyance as fraudulent had usually a difficult and expensive task to sustain the burden of proof resting on them. The debtor could well afford to, and had every inducement to, resist the creditors until the final decree was rendered; for he could thereafter, if the decree were adverse to him, effectually claim his homestead. Under the present Constitution, as above construed, the debtor who has in fact made a fraudulent conveyance not only imperils his exemption by contesting the claim of his creditors until decree, but he is put under strong inducement to lighten the task of his creditors—to annul the fraud, so to speak—by securing a reconveyance, and thus save his homestead. Here surely is a change from the old rule, and one that is beneficial to the creditors, and at the same time not an undue punishment of the innocent family of the fraudulent debtor.

In the "grounds of defense" filed by the creditors it seems to be contended that the making of the alleged fraudulent deed by Allen to his son would deprive him of a right to his discharge in bankruptcy, and hence of a right to his homestead. But it must be remembered that the bankrupt does not admit that said deed was fraudulently made, and has not yet reached the stage in the case where he could properly be required to contest this point. The mere reconveyance was not necessarily an admission that the prior deed was fraudulently made. The creditors have taken before the referee evidence to prove this charge, but the bankrupt's counsel, very properly conceiving that a determination of this question was not involved in this court at present, abstained from taking counter testimony. It is true that the objections to the claim of exemption which we are now considering tendered this issue to the bankrupt. But he had a clear right not to accept the tender thus prematurely made, and he has not accepted it. If at the time a claim of exemption is presented the bankrupt court finds in the record in indisputable form matter which would prevent a discharge, it might be proper to refuse to pass on the claim of exemption. It is not necessary to express an opinion on this point now, and none is expressed. It is sufficient that the right of discharge cannot now, in the case at bar, be properly passed on, and that no just argument against the claim of exemption can be founded on an as yet undeterminable and contestable question of fact.

It follows that the ruling of the referee must be reversed, and the bankrupt's claim of exemption allowed. I am further of opinion that

the litigation in the state court should be stayed, except as to such creditors, if any, as hold homestead waiver obligations binding the social assets of W. C. Allen. If there are any such creditors, they should be allowed to subject the exempt property, and, if it be necessary, the proceeding in this court can be stayed until they have had opportunity to do so. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061; In re Brumbaugh (D. C.) 128 Fed. 971.