**In re Eric M. FREEDLANDER, Debtor.**

**Bankruptcy No. 88–00768–RS.**

United States Bankruptcy Court,
E.D. Virginia.

Nov. 18, 1988.

H. Slayton Dabney, Jr., McGuire, Woods, Battle & Booth, Richmond, Va., for NCNB Nat. Bank of North Carolina.

S. Miles Dumville, Richmond, Va., for Federal Nat. Mortg. Ass'n.

Jonathan L. Hauser, Virginia Beach, Va., Trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

The debtor, Eric M. Freedlander, filed a Chapter 11 petition on April 7, 1988, and the first meeting of creditors was held May 9, 1988. On August 4, 1988, an Order was entered converting the debtor's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code. The debtor filed a homestead deed in Caroline County, Virginia, the county of his residence, on August 19, 1988. The matter presently before the Court arises on the objections of the Chapter 7 trustee and two secured creditors ("the Movants") to the debtor's claimed exemption of certain personal property pursuant to 11 U.S.C. § 522(b) and §§ 34-4, 34-26, and 34-27 of the Code of Virginia. The Court's consideration of the propriety of these exemptions came on for an expedited hearing on November 2, 1988, and followed an order entered October 31, 1988 temporarily restraining the debtor from selling or otherwise disposing of the property claimed exempt under the aforesaid state exemption statutes.[1]

In Schedule B-4 of his petition the debtor listed a variety of property as exempt under those various provisions of the Virginia Code. The movants, however, object to only three exemptions. First, they assert that the debtor's claimed homestead exemption in one man's wristwatch, the value of which apparently exhausts the $5,000

---

1. Virginia has "opted out" of the federal exemptions allowed under 11 U.S.C. § 522(b). Section 34-3.1 Va.Code Ann. (1979).

statutory limit, is invalid because the debtor failed to timely file his homestead deed as required by Virginia Code § 34–17. Second, the Movants contend that the debtor is not entitled to exempt a particular horse, a black filly named "Lady Ashland," under § 34–27 of the Virginia Code. This objection is raised on a number of grounds. The Movants assert that the debtor was not "at the time [he claimed the exemption] actually engaged in the business of agriculture"; and is not presently so engaged within the requirements of the statute. In the alternative the Movants claim that the horse, the value of which the debtor scheduled at $75,000, is simply too valuable to come within the meaning of the "Poor Farmer's" exemption. The Court is informed that the horse had to be destroyed as a result of a racing injury, and the Movants claim that the debtor is not entitled to exempt $25,000 of insurance proceeds realized as a result of the horse's destruction. Although the debtor claimed Lady Ashland exempt, the Trustee arranged for the insurance of the horse and paid the premium out of estate assets. Third, the Debtor's claim under § 34–26 to another horse, a bay colt called "Boogiewoogie Man," scheduled at $640,-000, but apparently worth considerably less today, is contested on the basis that the animal's value is too great to permit its exemption under the statute.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

As a preliminary matter, the Court notes that none of the movants either contended or argued that the debtor acquired any of the property claimed exempt with the expectation or intent of asserting exemptions under the appropriate statutes. The evidence showed that the debtor owned all three items of personalty for a number of years prior to the filing of his petition. Further, the debtor contended that until the IRS attempted to levy on all of his personal property he had no intention of availing himself of the protection of the Bankruptcy Code.

### I. Homestead Exemption in Wristwatch

■ Virginia Code § 34–4 entitles "[e]very householder ... to hold exempt from levy, seizure or garnishment ... his real or personal property ... to the value of not exceeding $5,000." This homestead exemption is valid, however, only if a homestead deed is timely filed in the proper location. Section 34–17 requires that "any person who files a voluntary petition in bankruptcy may [file a homestead deed] on or before the fifth day after the date initially set for the meeting held pursuant to 11 U.S.C. § 341, *but not thereafter ...*" (emphasis added). The first meeting of creditors in the debtor's voluntary Chapter 11 case was held May 9, 1988, and the debtor did not file his homestead deed until August 19, 1988.

The law is clear that courts should liberally construe homestead exemptions in favor of debtors. *Wilkinson v. Merrill*, 87 Va. 513, 12 S.E. 1015 (1891); *Oppenheim v. Myers*, 99 Va. 582, 39 S.E. 218 (1901); *Dickens v. Snellings*, 10 B.R. 949 (Bankr. W.D.Va.1981); *In re Smith*, 22 B.R. 866 (Bankr.E.D.Va.1982). "The law is equally clear, however, that there are certain strict requirements in a bankruptcy setting which must be observed." *In re Pennington*, 47 B.R. 322, 326 (Bankr.E.D.Va.1985); *see also Zimmerman v. Morgan*, 689 F.2d 471 (4th Cir.1982). Section 34–17 unambiguously requires that timely filing is necessary to successfuly claim a homestead exemption. Here, the debtor failed to file his homestead deed until more than three months after the date set for the first meeting of creditors in his voluntary Chapter 11 case.

The fact that the Chapter 11 case was subsequently converted to a case under Chapter 7 is of no import. To explain this point it is necessary to examine the relationship between a number of Code sections and Rules. The Bankruptcy Code provides that a voluntary case is commenced by the filing of a petition, and such commencement constitutes an order for relief. 11 U.S.C. § 301. Section 341 of the Code requires that "[w]ithin a reasonable time after the order for relief in a case

under this title, the United States trustee shall convene ... a meeting of creditors." 11 U.S.C. § 341(a). Bankruptcy Rule 2003 clarifies this requirement, stating that the meeting of creditors shall "be held not less than 20 nor more than 40 days after the order for relief." Bankr.Rule 2003. The effect of a conversion from a case under Chapter 11 to one under Chapter 7 is governed by § 348, which provides that the conversion "constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, *or the order for relief.*" 11 U.S.C. § 348(a) (emphasis added). Thus, read together, the Code and Rules dictate that the meeting of creditors be held sometime before 40 days after the petition in bankruptcy is first filed. Neither the Code nor the Rules mandate that another meeting of creditors be held subsequent to a conversion, and § 348 suggests that even if such a requirement existed it would have no effect upon the date set for the *initial meeting* of creditors. The debtor did not timely file his homestead deed, and this failure to comply with the provisions of § 34–17 of the Code of Virginia requires this Court to declare invalid his claimed homestead exemption in one man's wristwatch worth $5,000.

## II. Poor Farmer's Exemption In Lady Ashland

In his schedules, the debtor listed as exempt Lady Ashland, a black filly, pursuant to § 34–27. This section creates an exemption for householders actually engaged in the business of agriculture at the time of the filing of their petition in bankruptcy. *Meadows v. Farmer's & Merchant's Nat'l Bank*, 75 B.R. 357 (W.D.Va. 1987). The statute allows a debtor to exempt two horses unless he has exempted one horse already under § 34–26. The debtor listed one horse under § 34–26 and another, Lady Ashland, under § 34–27.

■ At the outset, the Court concludes that as a matter of law the operation of a horse breeding and training farm constitutes "agriculture" within the meaning of

the Virginia statute. The Movants, however, contend that the debtor was not actually "engaged in the business of agriculture" at the time he filed his petition, and further that the debtor is not presently so engaged. The Court agrees with both of these contentions.

■ From the evidence and testimony presented in the hearing, the Court concludes that, at the time of the filing of his petition in bankruptcy, the Debtor as chief executive officer was engaged in the business of directing and managing a large family-owned mortgage-lending institution which had elected to seek protection under Chapter 11 of the Bankruptcy Code and which operated as a debtor in possession until the conversion of its case to one under Chapter 7 on May 16, 1988. His compensation as CEO of the various Freedlander entities provided the debtor with the funds necessary to participate in the hobby of owning, breeding, training, and racing thoroughbred horses. The Court does not dispute the debtor's bona fide interest in, and knowledge of, horse racing; nor does the Court question the debtor's devotion to his avocation. The Court simply does not believe that the horse operations were anything more than a leisure-time pursuit.

In support of this conclusion, the evidence showed that in the years leading up to his Chapter 11 filing, the debtor incurred continuous and substantial losses associated with his hobby. The horse operations were funded with large infusions of capital taken from the debtor's own assets. The debtor did not, and could not, rely upon the horse farm for his sustenance. The debtor testified that during the months following August of 1987, when he received his last paycheck from Freedlander, Inc., he survived, not upon income received in horse farming, but by selling assets, including antique automobiles, and by obtaining loans.

For the reasons stated above, the Court concludes that the debtor was not engaged in agriculture at the time of the filing of his Chapter 11 petition, and is not presently so engaged. As such, the debtor is not entitled to the exemption provided by

§ 34–27 of the Virginia Code, and may not claim as exempt Lady Ashland or any insurance proceeds resulting from her destruction.

### III. Poor Debtor's Exemption in Boogiewoogie Man

■ Lastly, the debtor claims as exempt under § 34–26 one bay colt by Nijinsky, Boogiewoogie Man, valued by the debtor at $640,000 at the time he filed his schedules. The evidence showed that the debtor arrived at this figure by taking the average price paid for thoroughbred two-year olds sired by Nijinsky at auction in Louisville, Kentucky in the summer of 1988. The evidence also showed that since August Boogiewoogie Man has begun to race and has run poorly, finishing last in one race, and next to last in three others. As a result his value has fallen steeply, and the unrefuted testimony of the debtor was that he would be surprised if the horse could be sold today for $50,000.

Regardless of whether the horse is worth $50,000 or $640,000, the language of the code section is clear and unambiguous: "every householder ... shall ... be entitled to hold exempt from levy or distress the following articles ... to be selected by him ... (5) ... 1 horse...." Section 34–26 Va.Code Ann. (1950). The provision limits the number, but not the value, of horses which may be exempted by householders.[2] The Movants contend, however, that notwithstanding the plain language of the statute, to permit the debtor to retain such a valuable piece of property pursuant to the "poor debtor's" exemption acts to subvert the spirit and purpose of that exemption.

The Court is aware that reasonable men could conclude that the legislature of Virginia never intended to permit a debtor to exempt an extremely valuable beast pursuant to the "Poor Debtors" provisions. In all probability, since the statute antedates the advent of the automobile, the lawmakers meant merely to allow distressed householders to retain a necessary mode of transport. For the reasons set out below, however, the Court finds that the Virginia statute must be read literally to allow the debtor to retain one horse.

In *In re Perry*, 6 B.R. 263 (Bankr.W.D. Va.1980), the court faced the question of whether a mink coat worth $2,500 could be exempted as "necessary wearing apparel" within the meaning of § 34–26 of the Virginia Code. Reiterating that the exemption statutes are liberally construed in favor of debtors and concluding that the word "necessary" did not limit the provision, the court held that the coat could be properly exempted under the statute. The court emphasized the fact that § 34–26 contains a number of provisions which are limited to a certain dollar amount, for example, $25 worth of hay, $25 worth of fowl, or a clothes dryer not to exceed $150 in value. Section 34–26 Va.Code Ann. (1950). Other provisions, such as that pertaining to wearing apparel, however, contain no such limitations. The court was unwilling to provide a limitation where the legislature had not seen fit to include one.

In accord is the decision of the court in *In re Maginnis*, 24 B.R. 146 (Bankr.E.D. Va.1982), which sustained an exemption of $2,795.00 worth of china and silver pursuant to the provisions of § 34–26 permitting a householder to exempt "6 plates, ... 12 knives, 12 forks, 2 dozen spoons, [and] 12 dishes ..." The court held that "[t]here is no limit on the value of the articles exempted under Section 34–26 ..." *Maginnis*, *supra* at 148.

In their memoranda and at the hearing, the Movants cited an unpublished opinion

---

2. At one time, the "Poor Debtors" statute limited the value of an exemptable horse to $100.00. In 1876, however, the Virginia legislature amended the provision to remove this limitation. During the 112 years which followed the removal of this value limitation, the legislature has from time to time altered or amended the "Poor Debtors" statute. Other value limits have been deleted, for example, in 1970 the $100.00 cap on "carpets, rugs, linoleum or other floor covering" was dropped, and the provision allowing an exemption of wedding and engagement rings was added without limitation. Notwithstanding its periodic visitations, the legislature has never chosen to return a value limitation, of any kind, to the provision permitting a householder to exempt one horse.

of the Norfolk Division of the Eastern District in a case called *In re Ryan,* Bankruptcy Number 73–768–N. In this case the district court affirmed the decision of the bankruptcy court denying the exemption of "two persian rugs having an aggregate value of $2,000." The debtor had claimed the carpets under § 34–26 which permits householders to exempt "carpets, rugs, linoleum or other floor covering." The court held that the statute was ambiguous "when considered along with the purpose of poor debtor's exemptions," and refused to read the statute literally. Memorandum Opinion at 5. Apparently the court was concerned that "a bankrupt whose primary assets were invested in household rugs might discharge his debts by paying very little to his creditors and defeat the purpose of the Bankruptcy Act." Memorandum Opinion at 5.

This Court cannot agree with the reasoning of the *Ryan* opinion. "If the language of a statute has a definite and precise meaning, expressed in clear and concise terms, so that the sense is manifest, ... [the court called upon to interpret] ... the statute is required to adopt the sense which it naturally presents." *Miller v. Commonwealth,* 172 Va. 639, 2 S.E.2d 343 (1939). The *Miller* case stands for the proposition that a statute should be given effect according to its plain and obvious meaning, and that it should not be restricted to narrower limits than manifestly intended by the legislature because of some supposed policy of the law. Moreover, an unambiguous statute precludes a court from reading something into it which the legislature did not include therein. To do otherwise would be a usurpation of legislative authority.

Finding no ambiguity in the Virginia statute, the Court must conclude that the debtor, as a householder within the meaning of Code § 34–26, is entitled to select one horse to hold as exempt from levy or distress. That the law as written allows the debtor to retain a very valuable asset is regrettable. The Court concedes that by strictly reading the "Poor Debtor's" exemption, the Debtor in this case may be permitted more than the minimal "fresh start" envisioned by the Bankruptcy Code. But if the law is in need of replacement or reform such action must issue from the legislature.

An appropriate Order will issue.