The Court will enter an Order pursuant to our ruling.

**In re John FRANKLIN, Debtor.**

**In re Mark W. JEAN, Debtor.**

**Bankruptcy Nos. 96–16476–SSM, 97–13827–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 1, 1997.

Paul McGlone, Fairfax, VA, for debtors.

Gordon P. Peyton, Alexandria, VA, for John Franklin.

Robert G. Mayer, Fairfax, VA, for Mark W. Jean.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

A combined hearing was held on September 9, 1997, on the trustees' objections to the debtors' claimed homestead exemptions in these two cases. Both cases involve essentially identical facts, and both cases require the court to resolve the same issue: namely, when is a homestead deed "admitted to record" under Va.Code Ann. § 34–14 for the purpose of perfecting the Virginia homestead exemption? The question arises because debtor's counsel had homestead deeds delivered to the clerk of the appropriate state court within the statutory period for perfecting the exemption, but the clerk's certificate admitting them to record was not date-stamped until the following day, which was outside the statutory period. Based on the clerk's certificate, the trustee in each case has objected to the claimed exemptions. The debtors in response urge the court to determine that the homestead deeds were "admitted to record" upon being delivered to the clerk of court.

### Facts

The relevant facts are not in dispute and may be briefly summarized as follows.

#### A. *John Franklin. Case No. 96–16476*

John Franklin, a resident of Loudoun County, Virginia, filed a voluntary petition under chapter 13 of the Bankruptcy Code in this court on December 4, 1996. On his schedule of property claimed exempt, he listed $21,506 worth of property as being exempt under the provisions of § 34–4, Code of Virginia. On May 28, 1997, the case was converted to chapter 7 on the debtor's motion. No amendments were made to the schedule of property claimed exempt. Gor-

don P. Peyton was appointed as interim chapter 7 trustee, and the meeting of creditors under § 341, Bankruptcy Code, was held on June 26, 1997. On that date, the debtor and his wife, Donna L. Franklin, executed and acknowledged a joint homestead deed claiming $11,302.00 of property exempt.[1] The homestead deed recites that they support three dependents. The homestead deed was sent by Federal Express to the clerk's office of the Loudoun County Circuit Court and was delivered to B.J. Campbell, deputy clerk of court, at 9:22 a.m. on July 1, 1997. The clerk's stamped certificate on the homestead deed reflects that it was recorded the next day, July 2, 1997, in Deed Book 1508, Page 1102. The trustee filed his objection to the debtor's exemptions on July 17, 1997.

#### B. *Mark W. Jean. Case No. 97–13827.*

Mark W. Jean, also a resident of Loudoun County, Virginia, filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on May 21, 1997. On his schedule of property claimed exempt, he listed $5,710 worth of property as exempt under § 34–4, Code of Virginia. Robert G. Mayer was appointed as interim trustee. The meeting of creditors, like that in Mr. Franklin's case, was held on June 26, 1997. That same date, the debtor signed and acknowledged a homestead deed claiming $5,710.00 worth of property as exempt.[2] The homestead deed also recited that the debtor supported one dependent. The homestead deed was transmitted by Federal Express, apparently in the same envelope as that of Mr. and Mrs. Franklin,[3] to the clerk's office of the Loudoun County Circuit Court, and was received, as noted above, on July 1, 1997, at 9:22 a.m. The clerk's stamped certificate reflects that it was recorded the next day, July 2, 1997, in Deed Book 1508, Page 1103. The trustee filed his objection to the debtor's exemptions on July 16, 1997.

---

1. The trustee has not objected to the allocation of the exemptions as between the debtor husband and the non-debtor wife. *See, In re Heath,* 101 B.R. 469 (Bankr.W.D.Va.1987).

2. The trustee has not objected to this amount as exceeding the maximum amount that may be exempted under a homestead exemption. Va. Code Ann. § 34–4.

3. The same attorney represented both debtors.

*Conclusions of Law and Discussion*

### I.

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal under 28 U.S.C. § 158.

### II.

■ Under § 522(b), Bankruptcy Code, an individual debtor may exempt from property of the bankruptcy estate—and thus retain, free from the claims of most creditors[4]— either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (i.e., nonbankruptcy) Federal law. A state, however, is permitted to "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34–3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general Federal law. *In re Smith,* 45 B.R. 100 (Bankr.E.D.Va.1984).

The state law exemptions available to Virginia residents are primarily set forth in Title 34, Va.Code Ann. The exemption at issue here is the "homestead" exemption created by Va.Code Ann. § 34–4. Under the homestead exemption, a "householder"—defined as any resident of Virginia—may hold up to $5,000 of real or personal property exempt by filing for record an instrument known as a homestead deed in the clerk's office of the Circuit Court for the city or county where the real property is located and, if personal property is claimed, where the debtor resides. Va.Code Ann. §§ 34–4, 34–6, 34–13, and 34–14. Additional amounts may be claimed exempt if the householder supports dependents or is a disabled veteran. Va.Code Ann. §§ 34–4 (additional $500 for each dependent) and 34–4.1 (additional $2,000 for disabled veteran).

■ In the case of a debtor who has filed for bankruptcy, the homestead exemption must be "set apart" no later than 5 days after the first date set for the meeting of creditors in the bankruptcy case.[5] Va.Code Ann. § 34–17. Section 34–14 specifies how a homestead exemption is "set apart":

> Such personal estate selected by the householder and under §§ 34–4, 34–4.1, or § 34–13 shall be set apart in a writing signed by him. He shall, in the writing, designate and describe with reasonable certainty the personal estate so selected and set apart and each parcel or article, affixing to each his cash valuation thereof. *Such writing shall be admitted to record, to be recorded as deeds are recorded* in the county or city wherein such householder resides.

(Emphasis added). Failure to strictly comply with the requirements of setting apart a homestead exemption results in the loss of that exemption in bankruptcy. *Zimmerman v. Morgan,* 689 F.2d 471, 472 (4th Cir.1982); *In re Freedlander,* 93 B.R. 446, 448–49 (Bankr.E.D.Va.1988) (Shelley, J.).[6] Because

---

4. The limited class of creditors who can enforce their claims against exempt property is set forth in § 522(c), Bankruptcy Code.

5. Where a case is converted to chapter 7 from chapter 13 or chapter 11, the five days runs from the meeting of creditors in the converted case. Va.Code Ann. § 34–17.

6. The debtors argue that, as a matter of policy, the recording requirements of § 34–14 should be liberally construed in favor of allowing the exemption. It is well-settled in Virginia that in interpreting the *scope* of an exemption, a court must do so liberally in favor of the debtor, with any doubts to be resolved in favor of allowing the exemption. *Tignor v. Parkinson (In re Tignor),* 729 F.2d 977, 981 (4th Cir.1984), *citing South Hill Production Credit Assn. v. Hudson,* 174 Va. 284, 6 S.E.2d 668 (1940) and *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 187 S.E. 449 (1936); *In re Webb,* 210 B.R. 266, 272 (Bankr.E.D.Va.1997); *In re Hayes,* 119 B.R. 86, 88 (Bankr.E.D.Va. 1990) (Shelly, J.) (exemption statutes are to be "liberally construed so as to afford the relief which the legislature intended the debtor to enjoy"); *In re Perry,* 6 B.R. 263, 264 (Bankr. W.D.Va.1980) (Pearson, J.); *In re Williams,* 3 B.R. 244, 246 (Bankr.E.D.Va.1980) (Shelley, J.). It is just as well-settled, however, that in order to claim a homestead exemption, a debtor must strictly comply with the procedural requirements

§ 34–14 directs that homestead deeds are to be recorded "as deeds are recorded," the court turns for guidance to the Virginia recording statutes and the case law interpreting them.

Under Va.Code Ann. § 55–96, a deed or deed of trust is void as to purchasers for valuable consideration without notice and to all lien creditors "until and except from the time it is *duly admitted to record* " (emphasis added) in the city or county where the real estate is located. Virginia Code Ann. § 55–106 specifies when and where writings are to be recorded. It states, in relevant part:

> Except when it is otherwise provided, the circuit court of any county or city, or the clerk of any such court, or his duly qualified deputy, in his office, *shall admit to record* any such writing as to any person whose name is signed thereto with an original signature, except as provided in § 55–113, when it shall have been acknowledged by him, or proved by two witnesses as to him in such court, or before such clerk, or his duly qualified deputy, in his office, or the manner prescribed in §§ Articles 2 (§ 55–113 et seq.), 2.1 (§ 55–118.1 et seq.), and 3 (§ 55–119 et seq.) of this chapter.

(Emphasis added). Additionally, under Va. Code Ann. § 55–106.5, a clerk may refuse a document for recording where "the name or names of the person under which the document is to be indexed does not legibly appear or is not otherwise furnished." Section 17–59 specifies the duty of the clerk to record writings authorized by law to be recorded. It states, in relevant part:

> Every writing authorized by law to be recorded ... upon payment of fees for the same and the tax thereon, if any, *shall, when admitted to record, be recorded* by or under the direction of the clerk on such media as are prescribed by § 17–70. However, the clerk may refuse to accept any writing for filing or recordation [if certain requirements, not relevant here,

are not met.] However, if the writing or deed is accepted for record and spread on the deed books, it shall be deemed to be validly recorded for all purposes.: ...

> *Upon admitting any such writing or other paper to record the clerk shall endorse thereon the day and time of day of such recordation.*

(Emphasis added). Looking at the plain language of the statute, "recordation" of a writing then involves two distinct steps: the instrument must first be "admitted to record" and then it must be "spread on the deed books." [7] It is the "day and time of day"of the former—the "admission to record"—that the clerk is required to endorse on the instrument. *See Fooshee v. Snavely,* 58 F.2d 772, 774 (W.D.Va.1931), *aff'd* 58 F.2d 774 (4th Cir.1932), *cert. denied* 287 U.S. 635, 53 S.Ct. 85, 77 L.Ed. 550 (1932).

It is well-settled in Virginia that a deed, once admitted to record, constitutes notice to the world of that interest in property, whether or not the instrument is ever properly indexed. *See, e.g., Jones v. Folks,* 149 Va. 140, 146, 140 S.E. 126, 128 (1927); *Virginia Bldg. & Loan v. Glenn,* 99 Va. 460, 469, 39 S.E. 136 (1901); *Davis v. Beazley,* 75 Va. 491, 495 (1881) ("The admission to record is in law notice of the deed to the world. After it is 'admitted to record' it is the duty of the clerk to 'record' it in the deed-book; and the admission to record is equivalent to actual recordation for the purpose of notice. For this purpose the admission to record is effectual, though the clerical act of spreading the instrument *in extenso* on the deed-book be never performed.") (citations omitted); *Beverley v. Ellis & Allen,* 22 Va. (1 Rand. 102) 46, 48 (1822). The question nevertheless remains: what act is necessary in order for a writing to be considered "admitted to record?" No definition of this phrase is provided by any of the relevant statutes previously cited. While no Virginia case has squarely addressed the issue of *when* a document is

---

for setting apart and perfecting such exemption. *See, e.g., In re Heater,* 189 B.R. 629, 638 (Bankr. E.D.Va.1995) (Shelley, J); *In re Haynesworth,* 145 B.R. 222, 226 (Bankr.E.D.Va.1992) (Shelley, J.); *Freedlander,* 93 B.R. at 448; *In re Pennington,* 47 B.R. 322, 326 (Bankr.E.D.Va.1985) (Bostetter, C.J.).

7. The clerk is also required by statute to index the instrument "immediately upon admission ... to record." Va.Code Ann. § 55–96(A)(2).

"admitted to record," the case law is replete with closely-related problems and·issues.

In the seminal case of *Beverley v. Ellis & Allan*, 22 Va. (1 Rand. 102)´ 46 (1822), the grantee of certain property brought his deed to the proper court to be recorded among the land records and left it with the clerk.[8] *Id.* at 46. After it was ordered to be recorded, but before it could be actually recorded, the deed was lost or destroyed by some negligence of the clerk. *Id.* Subsequently, the original grantor gave a deed of trust on the property. *Id.* The then-Supreme Court of Appeals of Virginia held that the beneficiaries under the deed of trust were deemed to have constructive notice of the prior "recorded" deed, with the result being that the rights of the grantee whose deed was lost by the clerk's office took priority over the subsequent grantees. *Id.* at 48. The court reasoned:

> The court is of opinion that … the appellees had that constructive notice of· the prior right of the appellant to the land sold under the deed of trust, which that act affords to the subsequent purchasers, when its provisions ·are complied with. The certificate of the clerk that the deed was acknowledged and ordered to be recorded, and the fact proved … *that it was lodged with the clerk to be recorded … was, on the part of the appellant a full compliance* with the first section of that act; and *the court can perceive nothing in the fourth section, that requires him to do more.* The words in that section, "and recorded according to the directions of this act," in the opinion of the court, imposes no farther duty on the vendee in order to protect and secure his title. *Nor would that construction be tolerated, which would make it depend on the acts or omissions of the clerk over whom he has no control, and with whom the law compels him to deposit his deed.* A different construction would be attended with great mischief. The act having prescribed no time to the clerk to record a deed by spreading it on the record, its validity

would be fluctuating and uncertain, and the object of the act defeated. If there is any defect in the notice when searched for, the subsequent purchaser, perhaps, has his remedy against the clerk, if it was his duty to make it perfect. .

*Id.* at 48 (emphasis added).

In *Horsley v. Garth & Colquit*, 43 Va. (2 Gratt. 472) 446 (1846), a grantee of property brought a deed of trust to the appropriate county court several minutes before midnight on March 31st. *Id.* at 446–47. There was no person present at the courthouse to admit the deed of trust to record, so early the next morning on April 1st, the grantee went to the clerk's house. *Id.* The clerk, being satisfied that the grantee had attempted to record the deed of trust on March 31st, endorsed it as having been left with him to be recorded on March 31st. A judgment lien attached to the property on April 1st, and the judgment lien creditors subsequently brought a chancery suit that, among other relief, sought a ruling that the deed of trust was not recorded in time to defeat the judgment lien. The court held that parol evidence could be received to determine the actual date of recordation, and that, on the undisputed evidence, the instrument "in fact … was not filed in said [clerk's] office, nor delivered to said clerk for recordation, until … the 1st day of April[.]" *Id.* at 452. Thus, the judgment lien took priority over the deed of trust. *Id.* at 453.

Perhaps the case most closely analogous to the present one is *Fooshee v. Snavely*, 58 F.2d 772 (W.D.Va.1931), *aff'd* 58 F.2d 774 (4th Cir.1932), *cert. denied* 287 U.S. 635, 53 S.Ct. 85, 77 L.Ed. 550 (1932). In *Fooshee*, Mr. Snavely's former wife obtained a judgment against him on January 24, 1925. *Id.* at 773. This judgment became a lien against Mr. Snavely's property when the judgment was properly docketed at approximately 11:00 a.m. on September 27, 1926. *Id.* Some three months earlier, however, Mr. Snavely had deeded certain property in that county to a Mr. Trewett, who had since died with the plaintiffs claiming to be his heirs. *Id.* This

---

8. The counterpart of § 55–96 in effect at the time of *Beverley v. Ellis & Allen* did not use the phrase "admitted to record"; rather, it made void, in favor of creditors and subsequent purchasers for

valuable consideration without notice, all conveyances of lands "unless they shall be acknowledged or proved, and *lodged with the clerk to be recorded.*"

deed was not presented for recordation until September 27, 1926 (the same day the judgment was docketed), when it was received in the mail at approximately 8:00 a.m. *Fooshee,* 58 F.2d at 775 (4th Cir.). The deed was not accompanied by the appropriate recordation fee and state transfer tax. *Id.* The attorney who had mailed the deed was notified, and he subsequently tendered the proper fees and taxes on September 30, 1926. *Id.* The clerk's certificate on the deed was dated September 30, 1926, which was three days after the judgment was docketed. *Id.* As here, the argument was made that the deed should be considered as having been admitted to record when it was originally received by the clerk in the mail.

The district court held that the *only* way that a document can be "admitted to record" is by the physical indorsement of the day and time of recording on the instrument. *Id.* The court reasoned as follows:

> [T]he intent of the amendment of 1926 [enacting the last sentence of § 17–59 quoted *supra* ] was to abolish admission to record by mere mental act, and *to make the physical act of indorsing on the document the day and time of day of admission, the one and only act capable of evidencing admission to record.* To hold that a deed may be admitted to record by mere mental act on the part of the clerk is simply to ignore and nullify the amendment of 1926.

*Id.* (Emphasis added); *but see In re Smith,* 256 F.Supp. 844, 851 (E.D.Va.1966) (Hoffman, J.), *rev'd on other grounds,* 377 F.2d 271 (4th Cir.1967) (reasoning that the term "received" was synonymous with the term "filed" and accordingly finding that a lien attaches to an automobile as of the date of receipt by the Division of Motor Vehicles of the requisite paperwork if the documentation is in proper form along with the required fee).

On appeal, the Fourth Circuit, while approving of the reasoning of the district judge and affirming his decision, *Fooshee,* 58 F.2d at 777, took a slightly different analytic approach. First, the court noted that "[h]ad the deed been properly presented for recor-

dation, it would have been the duty of the clerk to *at once* admit it to record, and *no act of the clerk would, in any way, have affected the fact.*" *Id.* (Emphasis added). The deed, however, was *not* properly presented. It was lacking the proper filing fees along with the tax imposed on the transaction. *Id.* This fact, reasoned the Fourth Circuit, gave the clerk the discretion, under the applicable statute, to either return the deed as being improperly presented, or to admit it to record, thereby becoming personally liable for the amount of the fees and tax. *Id.* The court reasoned that since the clerk within a reasonable time (i.e., the same day) returned the deed for being improperly presented for recording, the deed had not been "admitted to record" at the time the judgment was docketed. *Id.* Thus, while both courts reached the same conclusion, they did so using different reasoning—the district court finding that the deed had not been admitted to record prior to the docketing of the judgment because it had not been date-stamped until some three days later, while the Fourth Circuit held that it had not been admitted to record because it was not presented in proper form and the clerk had yet to make the discretionary decision of whether to admit it to record.

### III.

The issue of whether a document, *received* timely via overnight delivery service, and otherwise proper for recording, but not in fact processed or time-stamped by the clerk until the next day, can be considered "admitted to record" as of the date received appears not to have been directly addressed by the Virginia courts. Traditionally, an attorney or party desiring to record an instrument personally presented it to an employee of the clerk's office, who would examine it and, if it was proper for recordation, would issue a recorder's receipt. There is no question, however, that many wasted hours can be spent standing in recording lines.[9] It is not surprising, therefore, that the increasingly busy attorney may think to make use of alternate and more convenient means of de-

---

9. The author of this opinion speaks from person-  al experience.

livery to the courthouse, such as U.S. Mail, commercial courier services, or overnight delivery services. Indeed, the Virginia General Assembly has recently authorized courts in Virginia to accept electronic filings from certain governmental units of "land records, instruments, judgments, and UCC financing statements" if certain requirements are met. Va.Code Ann. § 17–83.1:2. Accordingly, it can be argued that a model of what it means to "record" a writing based solely on the traditional practice of appearing personally at the land records counter is unduly restrictive and out of touch with modern practice.

It is also true that the notice concerns embodied in the traditional "race to the courthouse" paradigm have little or no relevance to homestead deeds, since in Virginia a homestead deed is effective even as to an antecedent judgment or execution lien. Va. Code. Ann. § 34–17 (homestead exemption may be set apart "at any time before [the property] is subjected by sale under creditor process.") *See Wilson v. Virginia Nat'l Bank*, 214 Va. 14, 196 S.E.2d 920 (1973) (funds subject to execution lien in hands of garnishee may be exempted at any time before a court orders payment of the money from the garnishee to the judgment creditor). Nevertheless, the Virginia General Assembly has chosen to use precisely the same phrase—"admitted to record"—to describe how a homestead exemption is "set apart" as it has to describe how a deed or deed of trust to real estate is made effective against competing liens and conveyances. Indeed, by specifically requiring that a homestead deed be "recorded *as deeds are recorded*" (emphasis added) the General Assembly has made plain its intent that "admitted to record" means the same thing in the context of perfecting a homestead exemption as it does in the context of conveyancing. For that reason, the court is not at liberty to adopt a more lenient interpretation of that phrase simply because exemption statutes are remedial in nature or because the setting apart of a homestead exemption does not generally implicate the same concerns over competing interests as does the conveyance of real property. Nor would the court wish to adopt, absent clear guidance by the General Assembly, an interpretation of "admitted to record" that would possibly create havoc with Virginia's system of recording land conveyances.

From the cases discussed above, several principles are clear. A court is not bound by the clerk's certificate as to the date and time of recordation but may examine parol evidence to determine when recordation actually occurred. *Horsley*, 43 Va. at 452. A clerk of court, when presented with an instrument in proper form for recording, is under a duty promptly to admit it to record, and the clerk's failure to do so—or subsequently to index it or spread it on the deed books—cannot defeat the rights of the party presenting the instrument. *Fooshee*, 58 F.2d at 777 (4th Cir.); *Davis*, 75 Va. at 495. However, mere arrival at the courthouse is not sufficient. *Horsley*, 43 Va. at 452. In the very nature of things, the clerk cannot act instantly but must allowed some finite period of time to examine an instrument offered for recording to determine whether, for example, it is properly acknowledged and is accompanied by the proper filing fee. *Fooshee*, 58 F.2d at 777 (4th Cir.) ("The deed was received through the mail, and it would seem not only reasonable but necessary that some time, at least, be given to the clerk to act.")

In busy jurisdictions in which large numbers of instruments are offered for recording each day, common sense dictates that the delay between arrival at the courthouse of an instrument that is mailed or delivered, and its examination by the clerk as part of the recording process, will not only be finite but possibly substantial. To be sure, a delay of nearly twenty-four hours, as in the two cases presently before the court, may well exceed what is reasonable. If so, the debtors, to the extent they are prejudiced by the failure of the clerk to promptly record their homestead deeds, may have an action against the clerk—an issue this court need not decide. But to treat an instrument as "admitted to record" simply because a deputy clerk has signed a delivery receipt would create great opportunity for mischief. Suppose, for example, that an owner of property had executed a deed of trust with respect to a parcel of land and then, subsequently, a deed of bar-

gain and sale for valuable consideration. Suppose further that the grantee of the deed, having no knowledge of the deed of trust, appears at the recording counter of the courthouse, does a title bring down, and finding nothing adverse, presents his deed for recordation and receives a recorder's receipt. Unknown to him, however, a deputy clerk elsewhere in the courthouse signed a delivery receipt for the deed of trust a half-hour earlier. That clerk later brings the deed of trust to the land records counter, where it is processed in due course. To hold that the deed of trust was "admitted to record"—thereby priming the deed processed earlier—from the moment of its delivery to the courthouse would throw land titles into confusion.[10]

■ The cases before the court do not involve situations in which the clerk made the decision to admit the homestead deeds to record but then lost them, failed to index them, or failed to copy them into the deed books. Rather, the deeds, because they were not presented in person at the recording counter by the person seeking to record them, were apparently set aside until there was a convenient opportunity to process them. While something short of time-stamping may be sufficient to constitute "admission to record," at the very least the phrase contemplates some affirmative act or decision on the part of the clerk. Merely setting the document aside until the clerk has time to attend to it does not constitute such an act. Although it may seem harsh to deny the debtors a homestead exemption simply because the clerk was too busy to record homestead deeds that got to the courthouse on time, any other result would do violence to the basic principles upon which the recording of land titles depends.

## IV.

A separate order will be entered in each case sustaining the trustee's objection to the exemptions claimed under Va.Code Ann. § 34–4.

---

10. It is the element of notice that distinguishes "admission to record" from "filing." As to the latter, there is a substantial body of case law that delivery to the clerk is sufficient. *See, e.g. Commonwealth v. Lagundino,* 37 Va. Cir. 78, 81 (Va. Cir.Ct.1995) (an affidavit in support of a search warrant is " 'filed' [under Va.Code Ann. § 19.2–54] when it is delivered to the proper officer and received by that officer to be kept in the place where records and papers are maintained. A paper is 'filed with the clerk' when it is delivered to the clerk."); *Hecker v. Wal–Mart Stores, Inc.,* 33 F.3d 531, 532 (5th Cir.1994) ("The longstand-

ing rule in Texas is that 'an instrument is deemed in law filed at the time it is left with the clerk, regardless of whether or not a file mark is placed on the instrument and regardless of whether the file mark gives some other date of filing.' "); *Meckes v. Reynolds Metals Co.,* 604 F.Supp. 598, 601 (N.D.Ala.) ("To file a paper requires its delivery to the proper office."), *aff'd* 776 F.2d 1055 (11th Cir.1985); *Jamar v. Patterson,* 868 S.W.2d 318 (Tex.1993) ("[A] document is 'filed' when it is tendered to the clerk, or otherwise put under the custody or control of the clerk.").